**RYAN M. ANDERSON, ESQ.**
Nevada Bar No. 11040
**JACQUELINE BRETELL, ESQ.**
Nevada Bar No. 12335
**LAUREN D. CALVERT, ESQ.**
Nevada Bar No. 10534
**MORRIS//ANDERSON**
716 S. Jones Boulevard
Las Vegas, Nevada 89107
Phone: (702) 333-1111
Fax:    (702) 507-0092
*Attorneys for Plaintiffs*
*Darlene Stevens & Scott Stevens*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| DARLENE STEVENS, as an individual and as the wife of SCOTT STEVENS, and SCOTT STEVENS, as an individual and as the husband of DARLENE STEVENS,<br><br>                    Plaintiffs,<br>v.<br><br>KEVIN PRENTICE,<br>WAL-MART STORES, INC, DOE MAINTENANCE EMPLOYEE, DOE EMPLOYEE, DOE JANITORIAL EMPLOYEE, DOE OWNER, I-V, ROE OWNERS, ROE EMPLOYER, and ROE COMPANIES.<br><br>                    Defendants. | CASE NO: 2:17-CV-00970-JCM-PAL |

### PLAINTIFFS DARLENE & SCOTT STEVENS' EMERGENCY MOTION TO DISQUALIFY COUNSEL OR, IN THE ALTERNATIVE, TO STRIKE DEFENDANT'S ANSWER, FOR REPEATED VIOLATIONS OF NEVADA RULE OF PROFESSIONAL CONDUCT 4.2

Plaintiffs DARLENE STEVENS and SCOTT STEVENS, by and through their counsel of record, RYAN M. ANDERSON, ESQ., JACQUELINE R. BRETELL, ESQ., and LAUREN D. CALVERT, ESQ., hereby file this emergency Motion to Disqualify Counsel, or in the Alternative, to Strike Defendant's Answer, for Repeated Violation of Nevada Rule of Professional Conduct 4.2.

1
2
3
4

This motion is made and based upon the memorandum of points and authorities below, the pleadings and papers on file, and any oral argument this Court may wish to entertain at any hearing on this matter.

5
6

DATED this __6th__ day of February, 2018.

7

                                           **MORRIS//ANDERSON**

8
9

                                           By: _/s/ Ryan M. Anderson___
                                         **RYAN M. ANDERSON, ESQ.**

10
11
12

                                         Nevada Bar No. 11040
                                         716 S. Jones Blvd.
                                         Las Vegas, Nevada 89107
                                         *Attorneys for Plaintiffs*
                                         *Darlene & Scott Stevens*

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   BACKGROUND

This matter arises out of a slip and fall incident that took place on May 10, 2015 at a Wal-Mart Store located at 540 Marks Street, Henderson, Nevada in Clark County. On that date, Plaintiff DARLENE STEVENS (hereafter, "Darlene") slipped on liquid left on Defendant's floor, causing her to violently fall to her side, breaking her great toe, and causing substantial injuries to her wrist, ankle, neck, spine, and knees.   At the time of her fall, Darlene (as well as her husband, Plaintiff SCOTT STEVENS [hereinafter "Scott"] were invitees of Defendant's premises and store.   As a direct result of the said negligence and carelessness of the Defendant, Scott and Darlene have been caused to suffer painful and potentially permanent injuries. As a result of the negligence of Defendant, Darlene has suffered multiple injuries, causing extensive treatment and care.

On January 16, 2018, Plaintiffs filed a Motion for Protective Order with the Court pertaining to pictures which Defendant (by and through their counsel, Charles Abbott, Esq.) displayed to Darlene's physical therapist (Don Nobis) at the time of his deposition.   As this Court is well aware, during Defendant's deposition of Mr. Nobis, Defense Counsel introduced the evidence by stating:

> Q.· · ·I'm going to show you some pictures of Ms. Stevens.
> A.· · ·Okay.
> Q.· · ·These are during her work.· I will warn you that they are a little bit -- they are -- she's in a -- they are of an adult nature.· They have been -- the sensitive parts had been blurred out for all of our benefit.[1]

Mr. Abbott's feigned reticence to display the pictures soon vanished as he then displayed nude picture after nude picture of Darlene to Mr. Nobis during Mr. Nobis's deposition. Mr. Abbott then went on to tell Mr. Nobis that although the pictures were taken in October of 2017, that he could assure the Darlene's phsyical therapist that Darlene was "doing a similar performance" in July of 2015 – a time

---

[1] *See* <u>Deposition of Don Nobis</u> attached hereto as **"Exhibit 1"**, 51:10-17.

when Darlene, while working, was doing so in a different manner as she was required to wear a cast up to her knee.[1]

The same day that Plaintiffs filed their January 16, 2018 Motion for Protective Order, the parties were present, together, attending a private mediation.  It was only at this mediation that Plaintiffs learned, for the first time, that Defendant was in possession of videos of Darlene performing as a web cam model.  This came as a surprise to Plaintiffs, as Plaintiffs had previously requested this information from Defense Counsel earlier during discovery, and Defendant failed to provide these documents and videos as requested.  Specifically, Plaintiffs propounded a Request for Production to Defendant as follows:

> **REQUEST FOR PRODUCTION NO. 2:** Produce any and all documents, records, photographs, audiotapes and videotapes of the plaintiff or about the plaintiff that were completed before, on or after plaintiff's incident.

> **RESPONSE TO REQUEST NO. 2:** Walmart incorporates by reference each objection in its General Objections above. Walmart objects to this Request because the term "plaintiff's incident" is undefined, rendering this Request vague and ambiguous. Walmart assumes "plaintiff's incident" means the alleged slip and fall by Darlene Stevens on May 10, 2015. Walmart also objects because this Request is overbroad and burdensome because it requests documents "of the plaintiff" or "about the plaintiff" "before, on, or after" May 10, 2015 regardless of when such documents were created, to what the documents relate (e.g., store receipts) and who authored the documents. Walmart also objects to this Request because it seeks documents not within Walmart's possession, custody, or control. Walmart objects because this Request seeks information neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Walmart also objects because this Request seeks information protected as attorney-client communications or attorney work product. Walmart also objects because this Request seeks information already produced by Walmart as part of Walmart's initial disclosures. Subject to and without waiving these objections, Walmart responds: ***Walmart provided all documents responsive to this Request as part of its initial disclosures.[2]***

---

[1] *Id*. at 51:19-20.

[2] *See* <u>Defendant's Response to Plaintiff's Request for Production of Documents</u>, Request No. 2, attached hereto as **"Exhibit 2"**, emphasis added.

Additionally, it was at this deposition that Plaintiffs learned, for the first time, that it was Defendant's intention to show these videos to Darlene's physicians at their upcoming depositions. Plaintiffs believe that if they had not filed their Motion for Protective Order regarding the photographs shown to Don Nobis during his own deposition, Defendant would have failed to inform Plaintiffs of their possession of the indicated video footage – choosing instead to "surprise" both Plaintiffs and Darlene's treating physicians and/or experts at the time of their upcoming depositions – much the same way that Plaintiffs were surprised by the photographs shown to Mr. Nobis at the time of his own deposition.

On January 16, 2018 the parties entered into an informal stipulation wherein Defendant agreed to produce to Plaintiffs *all* videos in Defendants possession no later than close of business on Thursday, January 18, 2018 so that Plaintiffs could file an appropriate Motion for Protective Order regarding the showing of these videos to Darlene's physicians at the time of their upcoming depositions.[1]  Instead of complying with the terms of their agreement, Defendant produced *some* of the videos in Defendant's possession, with a "promise" to produce the remainder of the videos on Saturday, January 20, 2018. Saturday came and went without any disclosure by Defendant. On Monday, January 22, 2018, Plaintiffs (by and through their counsel) sent a follow-up e-mail to Defendant's counsel, once again requesting these videos.  It was only at this time that Defendant produced what Defendant alleges to be the remainder of the videos in Defendant's possession.

As Plaintiffs' Counsel drafted the Motion for Protective Order, one facet--aside from the repeated, nearly obsessive nature of Defendant's interest in Darlene's employment—of Mr. Abbott's assertion was troubling. The website which hosts Darlene's performances, www.streamate.com, has a strict policy against recording performances of their artists. There are few, if any, bootlegged performances of streamate.com artists on the web, which led Plaintiffs to believe that Mr. Abbott, or one of his agents, was videotaping Darlene in violation of Mr. Abbot's own contract with www.streamate.com.  Upon receipt of the footage from Defendant, Plaintiffs spent hours analyzing the

---

[1] *See* Dkt. 51.

footage produced, in an effort to confirm the user who was improperly (and against his or her contract with www.streamate.com) violating Darlene's privacy by videoing her performances. It took Plaintiffs only a short time to deterine that the individual who was recording Darlene's performances was "Esteban" – also known as Steven Wynn of Wynn Investigations, Defendant's named and disclosed private investiagtor.

Much to Plaintiffs shock and surprise, on December 16, 2017 "Esteban" (a.k.a Steven Wynn, Defendant's agent and investigator) sent Darlene a chat message, wherein he communicated to Darlene: "trying to get registered but does not seem to work on a Mac computer."[1] The next day, "Esteban" was apparently able to "get registered" and he paid $32.51 to Darlene as she performed. Of the $32,51 paid to watch Darlene perform, $3.50 of the payments were "GOLD" payments which go directly to Darlene as a form of gratuity and incentive for her performance. In other words – Defendant's own agent and investigator was incentivizing Darlene's performances and encouraging her to continue.

Later that night, "Esteban," feeling generous at 11:56 in the evening, logged onto the website and sent Plaintiff $5 more of GOLD payments.[2] Plaintiff has a standard practice of sending video and photos to clients who pay $5 of GOLD payments. As a result of "Esteban's" payment and tip to Darlene, Darlene (who was unaware of Esteban's true identity as Defendant's agent and investigator), sent "Esteban" a set of photos and a video of her performances.[3] In other words, Defendant's agent sent a tip to Darlene – a calculated form of communication – which induced Darlene to send Defendant's agent additional photographs and video of herself.

On January 6, 2018, "Esteban" *again* contacted Darlene directly. On this day, "Esteban" sent a private message to Darlene wherein he stated: "hey I love to watch your performances but I keep missing them, can you send me a text when your performing or about to get started so I can log on? text

---

[1] All notes from "Esteban" are SIC as in the original. *See* 12.16.17 Note attached hereto as **"Exhibit 3"**.

[2] *See* Gold Note attached hereto as **"Exhibit 4"**.

[3] *Id.*

me at 714-675-5334 Esteban".[1]   Later that day, "Esteban" once again wrote directly to Darlene, in a private message: "it is difficult to see when your performing, text me."[2]

After finally receiving Defendant's disclosed video footage of Plaintiffs, Plaintiffs perfrmed a simple "google" search of "Esteban's" 714-675-5334 telephone number.  The search revealed that the number belonged to Wynn Investigations Inc., owned by Defendant's named agent and investigator – Steven Wynn.   One site, of many, containing Mr. Wynn's information was https://www.cheatingsupport.com/professional/wynn-investigations-inc/.  The sole employee noted for Wynn Investigations Inc. was Steve Wynn, President and CEO of Wynn Investigations Inc. The site's biography for Steve Wynn states:

> Steve Wynn is a retired Detective with over 22 years experience in Police Investigations including but not limited to Homicides, Robberies, major fraud crimes and under cover narcotics.  Following retirement became licensed private investigator assisting attorneys with domestic and commercial crimes investigations, families with special issues and spouses suspecting their significant others of infidelity.
>
> A "Hands On" style investigator who provides a personal touch in a confidential and discreet manner.
> SteveWynn
> 714.675.5334[3]

Plaintiffs would ask the Court to take judicial notice of the fact that 714-675-5334 belongs to Defendant's named investigator and agent, Steven Wynn.  Plaintiffs would also ask the Court to take judicial notice of the fact that "Esteban" is the Spanish language equivalent of Steven.

In Defendant's 2nd Supplement to their Disclosure of Witnesses and Documents, Defendant describes Mr. Wynn as follows:

///

---

[1] *See* <u>Private Message</u>, attached hereto as **"Exhibit 5"**.
[2] *Id.*
[3] *See* <u>Web Contact Information</u> attached hereto as **"Exhibit 6."**

Steven Wynn, a private investigator is expected to testify about performanes he recorded of Darlene Stevens as Goldie Star, including a description of such performances, what activities she engaged in and her body movements while performing. Mr. Wynn is also prepared to testify about the frequency of performances and the length of Ms. Stevens' performances. He will also testify about Streamate.com, the website which broadcasts, Ms. Stevens' streams. He also will be prepared to testify about the contracts performers must sign with Streamate and its parent company before being permitted to perform online.[1]

Defendant, by and through their counsel (Charles Abbott, Esq., Ronald H. Reynolds, Esq., and Harrison J. Reynolds, Esq) has placed Plaintiffs on notice that it is their intention to utilize Mr. Steven Wynna s a witness in this matter. In addition, Defendant, by and through their counsel (Charles Abbott, Esq., Ronald H. Reynolds, Esq., and Harrison J. Reynolds, Esq) have placed Plaintiffs on notice that it is their intention to utilize the fruits of Mr. Wynn's labor as evidence to discredit and hurt Plaintiffs.

There is no question that, Defendant plans to use the videotaped interactions of Darlene's performances as evidence, to be viewed by Defendant's medical experts, as well as Darlene's treating and retained medical physicians and providers. As noted in Defendant's disclosures, Defendant states,

"Dr. Manning and Dr. Rimoldi are expected to provide expert testimony regarding the medical procedures set forth in Plaintiff's medical records. **Both will testify about their review of Plaintiff's physical movements in her shows as Goldie Star and the relation of such movements to Darlene Stevens's pain complaints and alleged injuries.** Dr. Rimoldi will also provide expert testimony regarding his examination of Plaintiff, and Dr. Manning will testify about Plaintiff's knee injuries, pain management, therapy, and efficacy of treatment."[2]

Defendant, by and through their counsel, are not hiding the fact that they directly contacted Darlene and induced her, monetarily, to perform on camera and interact with Defendant's agent for the *sole* purpose of taking this evidence and demonstrating it as evidence in an effort to discredit Darlene.

***An attorney's agent, whether a retained investigator or an attorney's employee, is bound to the same ethical obligations which an attorney is bound.*** As will be more fully outlined below, Courts have

---

[1] *See* <u>Wal-Mart Stores, Inc.'s Second Supplemental Initial Disclosures Under Fed. R. Civ. Proc. 26(a)</u>, attached hereto (without exhibits) as **"Exhibit 7"**.

[2] *Id.*

not been reticent to issue all manner of sanctions against an attorney who even innocently violates NRPC 4.2 or its predecessor. The Courts have noted that the more wilful an attorney's conduct, the more severe the sanctions must be.

In the instant case, Defendant's counsel – Charles Abbott, Esq., Ronald H. Reynolds, and Harrison J. Reynolds, Esq., have violated all rules of decency and decorum for the legal profession.[1] Defendant's counsel have utilized Defendant's funds to induce Darlene to engage in performances specifically for the purpose of videotaping Darlene, with the specific intent of harming Darlene in the underlying litigation. Defendant's counsel are using the evidence of these performances to shock Darlene's medical providers during deposition and to intimidate Darlene. Defendant would not have access to these photos and videos if his agents (certainly under Defendant and/or Defendant's counsels' direction, as counsel has not attempted to return the ill-gotten evidence) had not personally contacted Darlene to arrange for meetings and to pay her directly for performances.  Defendant and/or Defendant's counsel have likely directed Defendant's agent to procure the footage, and at a minimum, Defendant's counsel have ratified his agent's improper actions.

Defendant has violated the very letter and spirit of the Nevada Rules of Professional Conduct. In accordance with the case law presented below, at a minimum, Defendant's counsel must be disqualified from this matter for gaining evidence Defendant's counsel would not have received had Defendant's counsel not contacted Darlene.  All evidence of Darlene's recordings and photos must be excluded from trial. Defendant must not be allowed to reference Darlene's employment at trial.  Finally, even these sanctions are not severe enough. The Defendant in this matter cannot be allowed to profit from counsels' wilful, repeated, violation of the Rules of Professional Conduct. As such, in addition to, or in lieu of disqualifying of Defense Counsel, Defendant's answer should be stricken in this matter due to the serious malfeasance committed by Defendant's actions. All of the enumerated sanctions are warranted

---

[1] It should be noted that this is not Charles Abbott's lone violation of the Court's rules. Mr. Abbott has likewise never complied with LR IA 11-1(b)(2) in that he has never filed a notice informing the Court that he is appearing under subsection (b)(1). Additionally, Counsel has never identified, by way of formal notice, the name and contact information of the associated or designated Nevada Attorney.

under State and Federal law and are the only mechanisms available to undo the prejudice caused by Defendant's actions.

## II.      ARGUMENT

### a.      The Prohibition Against Ex Parte Communication Applies to Attorneys and their Agents

Nevada Rule of Professional Conduct 4.2 states, "In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order."[1]   Furthermore, NRPC 5.3 notes in pertinent part, "With respect to a nonlawyer employed or retained by or associated with a lawyer:

…
   (c)  A lawyer shall be responsible for conduct of such a person that would be a violation of the Rules of Professional Conduct if engaged in by a lawyer if:

   (1)  The lawyer orders or, with the knowledge of the specific conduct, ratifies the conduct involved; or

   (2)  The lawyer is a partner or has comparable managerial authority in the law firm in which the person is employed, or has direct supervisory authority over the person, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.

An attorney's responsibility for the actions of his agent investigators has been repeatedly confirmed by the Courts. In *United States v. Smallwood*, the Court held that "a lawyer should not be able to avoid ethical strictures that bind lawyers by using an assistant to engage in the proscribed conduct.  In other words, in general, what a lawyer may not ethically do, his investigators and other assistants may not ethically do in the lawyer's stead. Were this not so, a lawyer might easily circumvent many ethical obligations through the use of an assistant or investigator who, given only a hint, cunningly perceives that his employer's cause can be aided by engaging in conduct that might be ethically forbidden to the lawyer."[2] Furthermore, in *Upjohn Co. v. Aetna Casualty & Sur Co.,* the Court noted that nonlawyer investigators hired by lawyers to gather information for their client's case were unethical, agreeing that the court should

---

[1] *See* NRPC 4.2.
[2] *United States v. Smallwood,* 365 F.Supp. 2d 689, 697 (E.D. Va. 2005).

not have allowed the defendant to benefit from the information that was gained by the investigators.[1]

Likewise, in *Public Serv. Elec and Gas v. Associated Elec. & Gas*, the Court noted that an investigator hired by lawyers may have no informal contact with former employees who are represented by attorney.[2]

In order to penalize a party who violates Rule 4.2, or its equivalent, the court has broad discretion in fashioning an appropriate penalty or sanction to remedy the problems caused by an attorney's improper *ex parte* communications with a party represented by counsel.[3]   The appropriate remedy for the breach of an ethical rule must be based on the facts of each case.[4]  In determining the proper sanction or remedy, the court must consider the client's right to be represented by the counsel of his choice, as well as, opposing parties right to prepare and try its case ***without prejudice***.[5]

As the District Court noted in Faison:

> "Some courts have elected to exclude from use at trial the evidence and information obtained during an improper *ex parte* communication. *Cagguila v. Wyeth Laboratories, Inc.,* 127 F.R.D. 653 (E.D.Pa.1989); *University Patents Inc. v. Kligman,* 737 F.Supp. 325, 328 (E.D.Pa.1990). Other courts have required the party who engaged in the improper *ex parte* communications to produce for the opposing party the information obtained during the communications. *Kligman,* 737 F.Supp. 325. Still other courts have elected to disqualify the party's counsel who improperly engaged in *ex parte* communications with the represented party. *Cronin,* 781 P.2d at 1153. The harshest penalty that may be imposed as a result of improper *ex parte* communications is dismissal of the pending litigation. *See e.g., Link v. Wabash Railroad Co.,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962).[6]

Defendant, by and through their counsel, has willfully, and even imperiously, noted that his retained expert has contacted Darlene and obtained video footage and photos of her performances. This ex parte communication by Defendant's retained investigator has severely prejudiced Plaintiff's case. Defendant, by and through their counsel – Charles Abbott -- proudly displayed nude photos of Darlene to her physical therapist and has confirmed that he will display nude videos to Darlene's treating physicians and providers in the future, in addition to Defendant's own retained expert witnesses.

---

[1] *Upjohn Co. v. Aetna Casualty & Sur Co.,* 768 F.Supp. 1186, 1213-14 (W.D. Mich. 1991).
[2] *Public Serv. Elec and Gas v. Associated Elec. & Gas,* 745 F. Supp. 1037 (D.C.N.J. 1990).
[3] *Professional Service Industries, Inc. v. Kimbrell,* 758 F.Supp 676, 680 (D.Kans. 1991).
[4] *See Zambrano,* 885 F.2d at 1478-1480, *Kimbrell,* 758 F. Supp. at 680.
[5] *University Patents Inc. v. Kligman,* 737 E. Supp, 325, 328 (E.D. Pa. 1990), emphasis added.
[6] *Faison v. Thornton,* 863 F. Supp. 1204, 1215 (D. Nev. 1993). (Overruled on Other Grounds).

Certainly, Darlene would not have performed for Steve Wynn, aka "Esteban" had she not been paid money to do so. In addition to Mr. Wynn, on behalf of Defendant and Defendant's counsel, paid Darlene, sent private messages to Darlene, and asked Darlene to text him when she would be performing. Defendant's agent – Mr. Wynn, also told Darlene, "It is difficult to see when your (SIC) performing. Text me." Defendant, by and through their counsels' direction to their agent, Mr. Wynn, communicated with and specifically induced Darlene to engage in behavior, with the specific intent of using this evidence against Darlene not only in deposition, but in trial.  Darlene would not have engaged in the conduct at issue for Mr. Wynn unless he had directly contacted her and directly paid her to do so. These are all repeated, flagrant violations of NRPC 4.2 and Defendant must be sanctioned for counsels' repeated violations.

   b.      **Disqualification of Counsel is Warranted Due to the Willful Nature of Their Acts.**

The Nevada Supreme Court in *Cronin* analyzed whether Counsel should be disqualified for ethical violations:

> "Therefore, to prevail on a motion to disqualify opposing counsel for an alleged ethical violation, the moving party must first establish "at least a reasonable possibility that some specifically identifiable impropriety did in fact occur."[1]  Moving counsel must also establish that "the likelihood of public suspicion or obloquy outweighs the social interests which will be served by a lawyer's continued participation in a particular case."[2]

In the instant case, impropriety repeatedly occurred. Defendant admits that Steven Wynn, who has the same phone number as "Esteban", viewed and recorded performances by Plaintiff. "Esteban" contacted Plaintiff on behalf of Defendant and Defendant's counsel in violation of Rule 4.2. The public has every right to be suspicious of Defendant and Defendant's counsels' tactics. The Court must not allow an attorney to benefit from offloading proscribed conduct onto an investigative agent.

///

///

---

[1] *Id.* at 909.
[2] *Cronin v. Eighth Judicial Dist. Court, In & For Cty. of Clark*, 105 Nev. 635, 641, 781 P.2d 1150, 1153 (1989), (disapproved of by *Nevada Yellow Cab Corp. v. Eighth Judicial Dist. Court ex rel. Cty. of Clark*, 123 Nev. 44, 152 P.3d 737 (2007) on other grounds).

Defendant and Defendant's counsel have benefitted from these illicit recordings. Defendant's response to Plaintiff's Motion for Protective Order demonstrates that Defendant intends to use these videos, which Defendant paid Plaintiff to create, to exhibit Plaintiff in the nude while showing her "dexterity" "flexibility" and "overall physical condition."[1]

In *Hamawi*, (which Plaintiff readily admits has limited persuasive authority to the Court as it is an unpublished Trial Court Opinion from Nevada State Court—albeit one that is strikingly similar to the case at bar), the Court was forced to evaluate the actions of an attorney who tasked an investigator to conduct sub rosa and speak with a represented party in violation of SCR 182, the precursor to NRPC 4.2. In that Opinion, the Court stated as follows:

> "The Court must consider the action of DeBecker Investigations in personally contact and having direct communications with the Plaintiff as if the Defense attorney's themselves has conducted the surveillance and communicated with the Plaintiff. A lawyer cannot shield himself for the ethical structure of SCR 182 by hiring an agent to engage in the proscribed conduct. There is no question Defense Counsel knew the Plaintiff was represented by counsel at the time of the investigator was retained to surveil and communicate with Plaintiff. Even if this event were to assume that Defense Counsel was only negligent in there instructions to DeBecker Investigations as the scope of what DeBecker was to perform, this would make no difference and is still a violation of SCR 182. *Faison v. Thorton,* 863 F. Supp. 1204 (1992) However, the fact that DeBecker surveiled the Plaintiff on three (3) separate occasions which all involved direct communication with Plaintiff, only video taping and audio taping the last surveillance and communication, tends to support more than negligent acts by Defense Counsel. Further, it is clear that Defense Counsel viewed the video/audio tape of Plaintiff before producing it to Plaintiff's Counsel and received reports from DeBecker investigations regarding its surveillance and communications with Plaintiff. It is inconceivable that Defense Counsel would not know at that point that SCR 182 has been violated.[2]

In the Case at bar, similar to *Hamawi*, Defendant's counsel not only is imputed to have looked at the photos taken by Esteban, they have shown them to others. Defendant's counsel has not only viewed the video footage of Darlene's performances that counsel improperly procured by speaking with Plaintiff, but

---

[1] *See* Dkt. 50., 5:10-12.
[2] *Hamawi v. Norton*, 2005 WL 6728726

they intend to show these videos to Plaintiff's doctors and treating providers and experts at the time of their depositions.  Defendant and its counsel have benefited immeasurably from speaking directly to Plaintiff.[1]

Defendant and their counsel directed "Esteban" to procure the footage in question by directly contacting Plaintiff. At a minimum, Defendant and their counsel have ratified his investigator's conduct and is overtly seeking to utilize this ill-gotten evidence in furtherance of Defendant's goals. As such, out of suitable deference to the Attorney/Client relationship, in protection of the reputation of the legal community, and to penalize Defendant's counsel for their willful conduct, Defendant's counsel should be disqualified from participating in the instant proceedings. As such, Plaintiff respectfully requests that the Court GRANT Plaintiff's Motion to Disqualify Defense Counsel.

   c.    **This is the Rare Case Where Prejudice is so Great that Defendants' Answer Should be Stricken**

The Court in *Hamawi,* the Court considered the striking of Defendants' answer for repeatedly violating the rule against ex parte communication. The court analyzed the factors set out in *Porter v. Martinez,* 941 F.2d 732, 733 (9th Cir. 1991), "(1) the public's interest in expeditious resolution of litigation; (2) the Court's need to manage its docket; (3) the substantial risk of prejudice to Plaintiff; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions."[2]

The Court, noted:

The substantial risk of prejudice to the Plaintiff is over-whelming here and this situation presents perhaps the rare circumstance when this prejudice outweighs the public policy favoring disposition of cases on the merits. Finally, the availability of less drastic sanctions is simply not available to remedy the prejudice to Plaintiff**. Defense Counsel withdrawal and replacement with new Defense Counsel will not insure that information in the Defendant's file about DeBecker's communications with Plaintiff was not passed on to the new Defense Counsel**. Although, the Court also is excluding the tape and any information learned in the tape, **this does not protect Plaintiff from the information learned by DeBecker in the other two interviews which was surely passed on to Defense Counsel**.

The prejudice to Plaintiff and the Courts interest in preserving the integrity of the attorney client relationship outweighs the other considered factors. **Moreover, if Defendant's knew**

_____

[2] *Hamawi v. Norton*, 2005 WL 6728726.

**that the only sanction they might incur for such unethical conduct was disqualified of Defense Counsel they may not be deterred from this activity in the future if they believed the information they might gain would be worth having to replace Defense Counsel.[1]**

Defendant has benefitted from their counsels' conduct. Although the disqualification of counsel and the striking of all references to Plaintiff's vocation is available, these lesser sanctions will not prevent counsel from alerting whichever Counsel replaces them as to the nature of Plaintiff's employment. Defendant must not be permitted to benefit from their attorney's disregard for the rule of law and the Nevada Rules of Professional Conduct. Based upon the severity of the prejudice to Darlene, Plaintiffs respectfully request that the Court strike Defendant Wal-Mart, Inc.'s Answer.

### III.   CONCLUSION

Plaintiffs respectfully request that this Court GRANT Plaintiffs' Motion to Disqualify Counsel, Or in the Alternative, to Strike Defendants' Answer for their Repeated Violation of Nevada Rule of Professional Conduct 4.2.

DATED this   6th   day of February, 2018.

MORRIS//ANDERSON

By: */s/ Ryan M. Anderson*
**RYAN M. ANDERSON, ESQ.**
Nevada Bar No. 11040
716 S. Jones Blvd.
Las Vegas, Nevada 89107
*Attorneys for Plaintiffs*
*Darlene & Scott Stevens*

---

[1] *Id.*

**<u>CERTIFICATE OF SERVICE</u>**

Pursuant to Pursuant to FRCP 5 and NEFCR 9 I hereby certify that I am an employee of MORRIS ANDERSON, and on the <u>6th</u> day of February, 2018, an electronic copy of **PLAINTIFFS DARLENE & SCOTT STEVENS' MOTION TO DISQUALIFY COUNSEL, OR IN THE ALTERNATIVE, TO STRIKE DEFENDANTS' ANSWER FOR REPEATED VIOLATION OF NEVADA RULE OF PROFESSIONAL CONDUCT 4.2** as follows:

⊠ Electronic Service – By serving a copy thereof through the Court's electronic service system

☐ U.S. Mail—By depositing a true copy thereof in the U.S. mail, first class postage prepaid and addressed as listed below; and/or

☐ Facsimile—By facsimile transmission pursuant to EDCR 7.26 to the facsimile number(s) shown below and in the confirmation sheet filed herewith. Consent to service under NRCP 5(b)(2)(D) shall be assumed unless an objection to service by facsimile transmission is made in writing and sent to the sender via facsimile within 24 hours of receipt of this Certificate of Service; and/or

Charles Abbott
LAW OFFICES OF CHARLES ABBOTT, PC
2150 Park Place, Suite 100
El Segundo, CA 90245
(310) 773-3756
(310) 773-3101 (fax)
cabbott@cabbottlaw.com
*Attorneys for Defendant, Wal-Mart Stores, Inc*

Robert K. Phillips
Pooja Kumar
PHILLIPS SPALLAS & ANGSTADT
504 S. 9th Street
Las Vegas, NV 89101
(702) 938 1510
info@psalaw.net
*Attorneys for Defendant, Wal-Mart Stores, Inc*

Ronald H. Reynolds
Harrison J. Reynolds
REYNOLDS & ASSOCIATES
823 Las Vegas Blvd. S., Suite #280
Las Vegas, NV 89101
(702) 445-7000
(702) 385-7743
*Attorneys for Defendant, Wal-Mart Stores, Inc*

_____/s/ Real Jumao-as_____
An employee of MORRIS ANDERSON LAW

# EXHIBIT 1

Stevens vs Prentice, Wal-Mart Stores, Inc., et al.

Deposition of

**DON NOBIS, MSPT**

*December 13, 2017*



702.8Rocket (702.876.2538)

www.RocketReporters.com

Case 2:17-cv-00970-JCM-PAL   Document 54   Filed 02/06/18   Page 19 of 55
Don Nobis, MSPT
Stevens vs Prentice, Wal-Mart Stores, Inc., et al.                                    51

 1   doing as of these pictures were activities that she's

 2   also doing as of the date, the times that you were

 3   treating her in May to July.

 4        A.    And that's a hypothetical?

 5        Q.    Yes.  A hypothetical.

 6        A.    Okay.

 7             MR. ABBOTT:  I'll send it to you.  I've

 8   already produced it to counsel.

 9             MS. BRETELL:  I'm going to do an objection

10   to the entire line of questioning.  It's an incomplete

11   hypothetical.  There's no evidence that she was

12   actually doing this on July 14th.

13             THE WITNESS:  So this is as of October?

14   BY MR. ABBOTT:

15        Q.    This picture was taken --

16        A.    Two months ago?

17        Q.    October of 2017.  But I do know that

18   Ms. Stevens was doing a similar performance as of

19   July 6th, July 11th and July 14th at a minimum of

20   2015.

21             And I don't -- and it's our belief that

22   when you act as a cam model or in the entertainment

23   industry, there's very little variance of what you do.

24   You're basically sexually performing on camera with

25   yourself.



# EXHIBIT 2

Charles Abbott (SBN 13811)
**Law Offices of Charles Abbott, PC**
2150 Park Place, Suite 100
El Segundo, CA 90245
(310) 773-3756
(310) 773-3101 (fax)
cabbott@cabbottlaw.com

Ronald H. Reynolds (SBN 827)
Harrison J. Reynolds (SBN 13748)
**Reynolds & Associates**
823 Las Vegas Blvd. S., Suite #280
Las Vegas, NV 89101
(702) 445-7000
(702) 385-7743

Attorneys for Defendant, Wal-Mart Stores, Inc.

## UNITED STATES DISTRICT COURT,
### DISTRICT OF NEVADA

| | |
|---|---|
| DARLENE STEVENS, as an individual and as the wife of SCOTT STEVENS, and SCOTT STEVENS, as an individual and as the husband of DARLENE STEVENS,<br><br>Plaintiff,<br><br>v.<br><br>KEVIN PRENTICE, WAL-MART STORES, INC., DOE MAINTENANCE EMPLOYEE, DOE EMPLOYEE, DOE JANITORIAL EMPLOYEE, DOE OWNER I-V, ROE OWNERS, ROE EMPLOYER, and ROE COMPANIES,<br><br>Defendants. | Case Number: 2:17-cv-00970-JCM-PAL<br><br>**WAL-MART STORES, INC'S RESPONSES TO PLAINTIFF'S REQUESTS FOR PRODUCTION OF DOCUMENTS**<br><br>Complaint filed:   January 24, 2017 |

PROPOUNDING PARTY:   Darlene Stevens

RESPONDING PARTY:   Defendant Wal-Mart Stores, Inc.

SET NUMBER:   One (1)

Under Federal Rule of Civil Procedure 34, Defendant Wal-Mart Stores, Inc. ("Walmart") through its attorneys at the Law Offices of Charles Abbott, responds to Plaintiff Darlene Stevens's ("Stevens") First Set of Requests for Production of Documents ("Requests"). These responses are given solely for the use in the above-captioned proceeding.

## General Objections

The general objections and limitations listed below apply to and are incorporated into each response by Walmart to the Requests. Each response is made without waiving Walmart's general objections.

1.     Walmart objects to the Requests to the extent each Request seeks documents protected from production by the attorney-client privilege, the work-product doctrine, and/or any other applicable privileges and protection from disclosure. Walmart intends to and claims privilege regarding all such documents and declines to produce any such documents. Walmart objects to identifying on a privilege log and will not identify, any documents protected by the attorney-client privilege or attorney-work-product doctrine and created after this lawsuit was filed because such identification would be unduly burdensome and oppressive and would itself reveal attorney-work product.

2.     Any inadvertent production of a privileged or protected document is not intended to be, is not, and should not be construed as a waiver (either express or implied) of any privilege or protection from disclosure.

3.     By agreeing to produce any documents it may have in response to any Request, Walmart does not concede or intend to suggest there are documents responsive to that Request.

4.     Walmart's responses and its production of documents and information, do not constitute an adoption of Darlene Stevens's purported Definitions or Instructions in her Requests. Walmart objects to the Definitions and Instructions to the extent they: (1) are unclear, ambiguous, overly broad or unduly burdensome; (2) contradict the ordinary and customary meaning of the words and phrases they purport to define; (3) seek to impose obligations different from, or in excess of, those created by the Federal Rules of Civil Procedure and the Civil Local

Rules of this Court; (4) include assertions of purported fact that are inaccurate or at the very least are disputed by the parties; and (5) incorporate other purported defined terms that suffer from such defects.

5.      Walmart will not produce electronically stored information not reasonably accessible to Walmart. For example, backup tapes are not reasonably accessible and will not be searched for responsive documents.

6.      Walmart objects to every Request, definition, and instruction as overly broad and unduly burdensome to the extent that it is not reasonably limited in scope, not reasonably limited to a time period relevant to this case, or seeks information neither relevant to any issue nor reasonably calculated to lead to the discovery of admissible evidence.

7.      Walmart objects to the Requests because they seek documents, which are confidential as Walmart trade secrets. Walmart will produce confidential documents under the confidentiality order the Court entered on September 8, 2017.

8.      Walmart objects to each Request because each purports to require production of documents, which (1) are public or otherwise available from sources to which Stevens also has access or (2) have already been produced or provided to Stevens.

9.      Walmart objects to each Request because each purports to require production of documents not within Walmart's possession, custody, or control.

10.     Walmart objects to each Request because each purports to require production of documents cumulative or duplicative of disclosures already provided by Walmart.

11.     Walmart objects to each Request if each seeks information or documents that Walmart may not disclose under confidentiality agreements with or legal obligations to third parties.

12.     Walmart's responses are based on a reasonable investigation by Walmart, and its investigation is continuing and ongoing. Subject to and waiving none of its objections set forth herein, Walmart may supplement any of its responses herein as necessary or appropriate if any additional information becomes available to Walmart.

13.     By responding to Stevens's Requests, Walmart waives no objection that may apply to: (a) the use by Stevens of any information or documents provided in response; or (b) the admissibility, relevance, or materiality of the information or documents to any issue in this case.

14.     Each response contains objections on competence, materiality, relevance, propriety, admissibility, and all other appropriate objections, besides those set forth herein, on such grounds as would permit or require exclusion of the following responses if made by a witness present and testifying in court. All these objections are reserved, not waived, and may be interposed at any other time.

15.     These General Objections apply to each Request and are incorporated into the responses set forth below, which are not to be deemed a waiver, either in whole or in part of these General Objections.

## SPECIFIC OBJECTIONS AND RESPONSES

**REQUEST FOR PRODUCTION NO. 1:** Regarding the plaintiff's presence and incident on defendant's premises in question, produce all documents, records, photographs, videotapes and audiotapes pertaining to the incident, including written and oral statements of any kind by any person regarding such event.

**RESPONSE TO REQUEST NO. 1:** Walmart incorporates by reference each objection in its General Objections above. Walmart objects to this Request because the terms "plaintiff's presence and incident" "defendant's premises in question" "written and oral statements of any kind" and "any person" are undefined, rendering this Request vague and ambiguous. For clarity, Walmart defines "defendant's premises in question" as Walmart Store #2838 at 540 Marks Street in Henderson, Nevada. Walmart assumes "plaintiff's presence and incident" means the alleged slip and fall by Darlene Stevens on May 10, 2015. Walmart also objects because this Request is overbroad and burdensome, because it requests documents of "any kind" and from "any person" regardless of when such documents were created and by whom. Walmart also objects to this Request because it seeks documents not within Walmart's possession, custody, or control. Walmart objects because this Request seeks information neither relevant nor reasonably

calculated to lead to the discovery of admissible evidence. Walmart also objects because this Request seeks information protected as attorney-client communications or attorney work product. Walmart also objects because this Request seeks information already produced by Walmart as part of Walmart's initial disclosures.

Subject to and without waiving these objections, Walmart responds: Walmart provided all documents responsive to this Request as part of its initial disclosures.

**REQUEST FOR PRODUCTION NO. 2:** Produce any and all documents, records, photographs, audiotapes and videotapes of the plaintiff or about the plaintiff that were completed before, on or after plaintiff's incident.

**RESPONSE TO REQUEST NO. 2:** Walmart incorporates by reference each objection in its General Objections above. Walmart objects to this Request because the term "plaintiff's incident" is undefined, rendering this Request vague and ambiguous. Walmart assumes "plaintiff's incident" means the alleged slip and fall by Darlene Stevens on May 10, 2015. Walmart also objects because this Request is overbroad and burdensome because it requests documents "of the plaintiff" or "about the plaintiff" "before, on, or after" May 10, 2015 regardless of when such documents were created, to what the documents relate (e.g., store receipts) and who authored the documents. Walmart also objects to this Request because it seeks documents not within Walmart's possession, custody, or control. Walmart objects because this Request seeks information neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Walmart also objects because this Request seeks information protected as attorney-client communications or attorney work product. Walmart also objects because this Request seeks information already produced by Walmart as part of Walmart's initial disclosures.

Subject to and without waiving these objections, Walmart responds: Walmart provided all documents responsive to this Request as part of its initial disclosures.

**REQUEST FOR PRODUCTION NO. 3:** Produce any and all policies and procedures of Defendant in effect on the date of this incident for the premises in question that concern the investigation of incidents where a person, not an employee, sustains injury and/or alleges to have

sustained injury either through a slip, trip, fall, assault, battery or by other means.

**RESPONSE TO REQUEST NO. 3:** Walmart incorporates by reference each objection in its General Objections above. Walmart objects to this Request because the words "premises in question" and "investigation of incidents" are undefined and render this Request vague and ambiguous. For clarity, Walmart defines "premises in question" as Walmart Store #2838 at 540 Marks Street in Henderson, Nevada.  Walmart assumes "this incident" means the alleged slip and fall by Darlene Stevens on May 10, 2015. Walmart also objects because this Request sweeps within its ambit potentially scores of documents that are (1) not reasonably calculated to lead to the discovery of admissible evidence and (2) confidential as Walmart's trade secrets. This Request seeks policies and procedures about "detention, assault, [and] battery" even though Plaintiff's injuries do not implicate those torts. Therefore, this Request constitutes a fishing expedition for documents, which are unrelated to an investigation of a customer injury inside a Walmart retail store.

Subject to and without waiving these objections, Walmart will produce its confidential policies and procedures related to the investigation of slip-and-fall incidents.

**REQUEST FOR PRODUCTION NO. 4:** Copies of any report of slips and/or trips and/or falls in the area where this incident occurred for the five year period prior to the date of this incident and during the two year period subsequent to the date of this incident.

**RESPONSE TO REQUEST NO. 4:** Walmart incorporates by reference each objection in its General Objections above. Walmart objects to this Request because the words "this incident" "slips and/or trips and/or falls" and "area" are undefined and render this Request vague and ambiguous. For clarity, Walmart defines "area" as Walmart Store #2838 at 540 Marks Street in Henderson, Nevada. Walmart assumes "plaintiff's incident" means the alleged slip and fall by Darlene Stevens on May 10, 2015. Walmart also objects because this Request sweeps within its ambit potentially scores of documents that are (1) not reasonably calculated to lead to the discovery of admissible evidence, (2) privileged as attorney-client communications and attorney work product, and (3) subject to confidentiality agreements between Walmart and a

third party. This Request is also overbroad and burdensome because it seeks information within "the five year period prior" and "two year period subsequent" about "slips and/or trips and/or falls" regardless if an injury occurred, who was injured, and where that injury occurred.

Subject to and without waiving these objections, Walmart will produce a log listing all customer slip-and-fall incidents at Walmart Store #2838 from May 10, 2012 to May 10, 2015.

**REQUEST FOR PRODUCTION NO. 5:** Any and all Documents ranking, evaluating, interpreting or otherwise analyzing the causes of slip and fall accidents in your stores, including, but not limited to, Documents which mention spilled liquids as a cause of slip and fall accidents in your stores.

**RESPONSE TO REQUEST NO. 5:** Walmart incorporates by reference each objection in its General Objections above. Walmart objects to this Request because the words "slip and fall accidents" "your stores" and "spilled liquids" are undefined and render this Request vague and ambiguous. For clarity, Walmart defines "your stores" as Walmart Store #2838 at 540 Marks Street in Henderson, Nevada. Walmart objects to this Request because it seeks documents with no limit as to time. Walmart also objects this Request seeks documents not within Walmart's possession, custody, or control. Walmart objects because this Request seeks information neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Walmart also objects because this Request sweeps within its ambit potentially scores of documents that are (1) privileged as attorney-client communications or attorney work product and (2) subject to confidentiality agreements between Walmart and a third party. This Request is also overbroad and burdensome because it seeks information about "slip and fall accidents" regardless if an injury occurred, who was injured, and where that injury occurred.

Subject to and without waiving these objections, Walmart will produce a log listing all customer slip-and-fall incidents at Walmart Store #2838 from May 10, 2012 to May 10, 2015.

**REQUEST FOR PRODUCTION NO. 6:** Regarding defendant's premises in question, produce all sweep logs and other documents as to the cleaning and maintenance of the premises for the 30 days prior to the incident, the day of the incident, and the 30 days following the

incident.

**RESPONSE TO REQUEST NO. 6:** Walmart incorporates by reference each objection in its General Objections above. Walmart objects to this Request because the words "sweep logs," "cleaning and maintenance," and "defendant's premises in question" are undefined and render this Request vague and ambiguous. For clarity, Walmart defines "defendant's premises in question" as Walmart Store #2838 at 540 Marks Street in Henderson, Nevada. Walmart assumes "incident" means the alleged slip and fall by Darlene Stevens on May 10, 2015. Walmart also objects because this Request sweeps within its ambit potentially scores of documents not reasonably calculated to lead to the discovery of admissible evidence. By asking for sixty days of documents relating to cleaning and maintenance, this Request is also overbroad and burdensome.

Subject to and without waiving these objections, Walmart responds: Walmart provided all responsive documents, to the extent that they exist, as part of its initial disclosures.

**REQUEST FOR PRODUCTION NO. 7:** Regarding the defendant's premises in question, produce all contracts and/or agreements that were in full force and effect on the date of plaintiff's incident, which existed between defendant and a third party individual or entity for the maintenance, care, inspection and/or cleaning of defendant's premises in question.

**RESPONSE TO REQUEST NO. 7:** Walmart incorporates by reference each objection in its General Objections above. Walmart objects to this Request because the words "defendant's premises in question" "contracts and/or agreements" "plaintiff's incident" and "maintenance, care, inspection and/or cleaning" are undefined and render this Request vague and ambiguous. For clarity, Walmart defines "defendant's premises in question" as Walmart Store #2838 at 540 Marks Street in Henderson, Nevada. Walmart assumes "incident" means the alleged slip and fall by Darlene Stevens on May 10, 2015. Walmart also objects because this Request sweeps within its ambit potentially scores of documents that are (1) not reasonably calculated to lead to the discovery of admissible evidence, (2) privileged as attorney-client communications and attorney work product, (3) confidential as Walmart's trade secrets and/or (4) subject to confidentiality agreements between Walmart and a third party. This Request is also overbroad and burdensome,

because it seeks information since May 10, 2015 about "contracts and/or agreements" for "maintenance, care, inspection and/or cleaning" regardless of (i) what type of "maintenance, care, inspection and/or cleaning," (ii) where the "maintenance, care, inspection and/or cleaning" took place and (iii) who performed the activity.

**REQUEST FOR PRODUCTION NO. 8:** Regarding the defendant's premises in question, produce any and all documents as to policies and procedures for cleaning and maintenance of the subject property that were in effect on the date of this incident.

**RESPONSE TO REQUEST NO. 8:** Walmart incorporates by reference each objection in its General Objections above. Walmart objects to this Request because the words "defendant's premises" "policies and procedures" "cleaning and maintenance" "subject property" and "incident" are undefined and render this Request vague and ambiguous. For clarity, Walmart defines "defendant's premises" and "subject property" as Walmart Store #2838 at 540 Marks Street in Henderson, Nevada. Walmart assumes "incident" means the alleged slip and fall by Darlene Stevens on May 10, 2015. Walmart also objects because this Request sweeps within its ambit potentially scores of documents that are (1) not reasonably calculated to lead to the discovery of admissible evidence and (2) confidential as Walmart's trade secrets. This Request is also overbroad and burdensome, because it seeks "policies and procedures" in effect on May 10, 2015, about "cleaning and maintenance" regardless of (i) what type of "cleaning and maintenance," (ii) where the "cleaning and maintenance," took place and (iii) who performed the activity.

Subject to and without waiving these objections, Walmart will produce its confidential policies and procedures related to the cleaning and maintenance of the floor where Plaintiff fell at Walmart Store #2838.

**REQUEST FOR PRODUCTION NO. 9:** Produce copies of all safety manuals, brochures, guidelines and other written safety materials relating to customer safety for defendant's premises in question that were in effect on the date of plaintiff's incident.

**RESPONSE TO REQUEST NO. 9:** Walmart incorporates by reference each objection

in its General Objections above. Walmart objects to this Request because the words "safety manuals, brochures, guidelines or other written safety materials," "defendant's premises in question" and "plaintiff's incident" are undefined and render this Request vague and ambiguous. For clarity, Walmart defines "defendant's premises in question" as Walmart Store #2838 at 540 Marks Street in Henderson, Nevada. Walmart assumes "plaintiff's incident" means the alleged slip and fall by Darlene Stevens on May 10, 2015. Walmart also objects because this Request is overly broad and unduly burdensome. Walmart objects because this Request sweeps within its ambit potentially scores of documents that are (1) not reasonably calculated to lead to the discovery of admissible evidence and (2) confidential and/or a trade secret. Instead, this Request constitutes a fishing expedition for all "safety manuals, brochures, guidelines or other written safety materials," including those documents that have no relevant information about Darlene Stevens's alleged incident.

Subject to and without waiving these objections, Walmart will produce its confidential policies and procedures related to the prevention of slip-and-fall injuries at Walmart Store #2838.

**REQUEST FOR PRODUCTION NO. 10:** Produce any and all diagrams, plots, charts, video, photos or other depictions of defendant's premises that accurately reflects its condition on day of this incident.

**RESPONSE TO REQUEST NO. 10:** Walmart incorporates by reference each objection in its General Objections above. Walmart objects to this Request because the words "diagrams, plots, charts, video, photos or other depictions" and "defendant's premises" "condition" and "this incident" are undefined, rendering this Request vague and ambiguous. For clarity, Walmart defines "defendant's premises" as Walmart Store #2838 at 540 Marks Street in Henderson, Nevada. Walmart assumes "this incident" means the alleged slip and fall by Darlene Stevens on May 10, 2015. Walmart also objects because this Request is overbroad and burdensome because it requests documents regardless of (i) whether such documents relate to the area within Walmart Store #2838 where Darlene Stevens alleges this incident occurred, (ii) when such documents were created and (iii) by whom. Walmart also objects to this Request

because it seeks documents not within Walmart's possession, custody, or control. Walmart objects because this Request seeks information neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Walmart also objects because this Request seeks information protected as attorney-client communications or attorney work product. Walmart also objects because this Request seeks information already produced by Walmart as part of Walmart's initial disclosures.

Subject to and without waiving these objections, Walmart responds: to the extent such documents exist and have not already been produced, Walmart will produce nonprivileged, responsive documents from its claims file relating to Darlene Stevens's alleged slip and fall on May 10, 2015.

**REQUEST FOR PRODUCTION NO. 11:** Produce any and all work and/or repair orders for the floors on Defendant's premises.

**RESPONSE TO REQUEST NO. 11:** Walmart incorporates by reference each objection in its General Objections above. Walmart objects to this Request because the words "work and/or repair orders" and "Defendant's premises" are undefined and render this Request vague and ambiguous. Walmart assumes "Defendant's premises" means Walmart Store #2838 at 540 Marks Street in Henderson, Nevada. Walmart objects to this Request because it seeks documents with no limit as to time and such documents are not within Walmart's possession, custody, or control. Walmart objects because this Request seeks information neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Walmart also objects because this Request sweeps within its ambit potentially scores of documents that are (1) not reasonably calculated to lead to the discovery of admissible evidence, (2) privileged as attorney-client communications and/or attorney work product, and (3) subject to confidentiality agreements between Walmart and a third party. This Request is also overbroad and burdensome because it seeks information not limited by time period and requests "any and all work and/or repair orders for the floors" regardless if any relate to liquid on the floor in a Walmart store.

**REQUEST FOR PRODUCTION NO. 12:** Produce samples of those exact same

warning devices and methods that defendant was employing at the time of this incident.

**RESPONSE TO REQUEST NO. 12:** Walmart incorporates by reference each objection in its General Objections above. Walmart objects to this Request because the words "warning devices and methods" and "this incident" are undefined and render this Request vague and ambiguous. Walmart assumes "this incident" means the alleged slip and fall by Darlene Stevens on May 10, 2015. Walmart also objects because this Request is overly broad and unduly burdensome. Walmart objects because this Request is not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION NO. 13:** Produce complete copies of all corporate fall and/or injury protection programs of Defendant that were in existence on the date of this incident and would have applied to the property in question.

**RESPONSE TO REQUEST NO. 13:** Walmart incorporates by reference each objection in its General Objections above. Walmart objects to this Request because the words "fall and/or injury protection programs" "this incident" and "property in question" are undefined and render this Request vague and ambiguous. Walmart defines "property in question" as Walmart Store #2838 at 540 Marks Street in Henderson, Nevada. Walmart assumes "this incident" means the alleged slip and fall by Darlene Stevens on May 10, 2015. Walmart also objects because this Request sweeps within its ambit potentially scores of documents that are (1) not reasonably calculated to lead to the discovery of admissible evidence and (2) confidential as Walmart's trade secrets. Walmart also objects because this Request is overly broad and unduly burdensome and duplicative of Plaintiff's other Requests.

Subject to and without waiving these objections, Walmart will produce its confidential policies and procedures related to the prevention of slip-and-fall injuries at Walmart Store #2838.

**REQUEST FOR PRODUCTION NO. 14:** Produce a copy of Defendant's corporate statistics regarding slip and fall and/or trip and fall incidents at the subject property.

**RESPONSE TO REQUEST NO. 14:** Walmart incorporates by reference each objection in its General Objections above. Walmart objects to this Request because the words "corporate

statistics" "slip and fall and/or trip and fall incidents" and "subject property" are undefined and render this Request vague and ambiguous. For clarity, Walmart defines "subject property" as Walmart Store #2838 at 540 Marks Street in Henderson, Nevada. Walmart also objects because this Request sweeps within its ambit potentially scores of documents that are (1) not reasonably calculated to lead to the discovery of admissible evidence, (2) privileged as attorney-client communications and attorney work product, and (3) subject to confidentiality agreements between Walmart and a third party. This Request is also overbroad and burdensome because it seeks all information about "slip and fall and/or trip and fall incidents" regardless of (i) when the event occurred, (ii) if an injury resulted, (iii) who was injured, and (iv) where that injury occurred.

**REQUEST FOR PRODUCTION NO. 15:** Produce a copy of Defendant's corporate document retention program that was in existence on the date of this incident and would have applied to the property in question.

**RESPONSE TO REQUEST NO. 15:** Walmart incorporates by reference each objection in its General Objections above. Walmart objects to this Request because the words "this incident" and "property in question" are undefined and render this Request vague and ambiguous. For clarity, Walmart defines "property in question" as Walmart Store #2838 at 540 Marks Street in Henderson, Nevada. Walmart assumes "this incident" means the alleged slip and fall by Darlene Stevens on May 10, 2015. Walmart also objects because this Request sweeps within its ambit potentially scores of documents that are (1) not reasonably calculated to lead to the discovery of admissible evidence and (2) protected as attorney-client communications or attorney work product, and/or (3) confidential as Walmart's trade secrets. Walmart also object because this Request is overly broad and unduly burdensome.

Subject to and without waiving these objections, Walmart will produce its confidential policies and procedures related to the investigation of slip-and-fall incidents and preservation of evidence.

**REQUEST FOR PRODUCTION NO. 16:** In regards to Defendant's and/or its

insurance carrier's handling of this incident, produce the pre-litigation investigation/adjusting claims file(s) with any and all contents therein to include, but not limited to, recorded and/or written statements, notes by adjusters/processors and/or investigators, photographs and videotapes (**in color if available**), Index Bureau information regarding claims made or believed to be made by plaintiffs, medical records, documentation between agent and claims department, and computer printouts of incident information stored on computer database(s), including any and all pre-litigation computer claims log(s).  **(If you are claiming that any of these documents are privileged, please attach an informative privilege log which includes: 1) the author of said document; 2) the recipients of said document (including cc's); 3) other individuals with access to the document and their capacities; 4) the type of document; 5) the subject matter of the document; 6) the purpose(s) for the production of the document; 7) the date on the document; and 8) a detailed, specific explanation as to why the document is privileged or otherwise immune from discovery, including a presentation of all factual grounds and legal analysis in a non-conclusory fashion.** *See*, **Discovery Commissioner #10 (November, 2001) citing, Vauhgn v. Rosen, 484 F. 2.d 820 (D.C. Cir. 1973); Diamond State Ins. Co. v. Rebel Oil Co., Inc., 157 F.R.D. 691 (D. Nev. 1994); Nevada Power Co. v. Monsanto Co., 151 F.R.D. 118 (D. Nev. 1993).**

        RESPONSE TO REQUEST NO. 16: Walmart incorporates by reference each objection in its General Objections above. Walmart objects to this Request because the terms "this incident" "investigation/adjusting claims file(s)" and "Index Bureau information" are undefined, rendering this Request vague and ambiguous. For clarity, Walmart assumes "this incident" means the alleged slip and fall by Darlene Stevens on May 10, 2015 at Walmart Store #2838 at 540 Marks Street in Henderson, Nevada. Walmart objects because this Request is overbroad and burdensome. Walmart also objects to this Request because it seeks information neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Walmart objects because this Request seeks documents not within Walmart's possession, custody, or control. Walmart also objects because this Request seeks information protected as

attorney-client communications and attorney work product. Walmart also objects because this Request seeks information already produced by Walmart as part of Walmart's initial disclosures.

Subject to and without waiving these objections, Walmart responds: to the extent such documents exist and have not already been produced, Walmart will produce nonprivileged, responsive documents from its claims file relating to the alleged slip and fall by Darlene Stevens on May 10, 2015.

**Request for Production No. 17:** Produce copies of all documents relating to Plaintiff's incident in question, prior incidents and subsequent incidents, if any, involving or not involving injuries, medical records, employment records, on-the-job injuries, and other documents <u>pertaining to Plaintiff that Plaintiff has not provided to Defendant</u>.

**Response to Request No. 17:** Walmart incorporates by reference each objection in its General Objections above. Walmart objects to this Request because the terms "Plaintiff's incident in question, prior incidents and subsequent incidents" "injuries" "employment records" "on-the-job injuries" and "other documents" are undefined, rendering this Request vague and ambiguous. Walmart assumes "Plaintiff's incident in question" means the alleged slip and fall by Darlene Stevens on May 10, 2015 at Walmart Store #2838 at 540 Marks Street in Henderson, Nevada. Walmart also objects because this Request is overbroad and burdensome. Walmart also objects to this Request because it seeks documents not within Walmart's possession, custody, or control. Walmart objects because this Request seeks information Plaintiff could obtain through its own investigation. Walmart objects because this Request seeks information neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Walmart also objects because this Request seeks information protected as attorney-client communications or attorney work product.  Walmart also objects because this Request seeks information already produced by Walmart as part of Walmart's initial disclosures.

Subject to and without waiving these objections, Walmart responds: to the extent such documents exist and have not already been produced, Walmart will produce nonprivileged, responsive documents.

**Request for Production No. 18:** Produce any and all expert witness reports, notes and documents disclosed to and/or reviewed by any and all expert witnesses, as well as each expert witness's curriculum vitae and documents, articles or other literature relied upon to formulate the expert witnesses' opinions and conclusions.

**Response to Request No. 18:** Walmart incorporates by reference its General Objections as if set forth above. Walmart objects because the words "reports, notes" causes the Request to be incomprehensible, vague and ambiguous. Walmart further objects because this Request is overbroad and burdensome as it sweeps within its ambit potentially scores of documents that are (1) not reasonably calculated to lead to the discovery of admissible evidence and (2) privileged as attorney-client communications and/or attorney work product. And Walmart objects to this Request to the extent that it calls for the premature disclosure of expert information, documents, and/or opinions in violation of Fed. R. Civ. P. 26(a)(2). At this stage, it is untimely to request or provide expert information, documents and opinions.

**Request for Production No. 19:** Please produce all maintenance and repair logs, receipts, work orders or other documents, relating to all floors in store in question for the five (5) years prior to the date of incident which is the subject of the Plaintiff's Complaint on file herein.

**Response to Request No. 19:** Walmart incorporates by reference each objection in its General Objections above. Walmart objects to this Request because the words "maintenance and repair logs, receipts, work orders and/or other documents" "all floors" "store in question" and "incident" are undefined and render this Request vague and ambiguous. For clarity, Walmart defines "store in question" as Walmart Store #2838 at 540 Marks Street in Henderson, Nevada. Walmart assumes "incident" means the alleged slip and fall by Darlene Stevens on May 10, 2015. Walmart also objects because this Request sweeps within its ambit potentially scores of documents that are (1) not reasonably calculated to lead to the discovery of admissible evidence, (2) privileged as attorney-client communications and attorney work product, and (3) subject to confidentiality agreements between Walmart and a third party. This

Request is also overbroad and burdensome because it request information for "five years prior" about "maintenance and repair" of "all floors" regardless of (i) when the maintenance or repair was conducted, (ii) what type of maintenance or repair was being done, (iii) whether the maintenance or repair had anything to do with liquid on a floor in Walmart Store #2838, and/or (4) whether the maintenance or repair related to the area in Walmart Store #2838 where the alleged slip and fall by Darlene Stevens occurred.

**REQUEST FOR PRODUCTION NO. 20:** Please produce video, audio, other recordings or pictures (whether still frame or moving) of the subject fall or the area near the subject fall for the day of the incident.

**RESPONSE TO REQUEST NO. 20:** Walmart incorporates by reference each objection in its General Objections above. Walmart objects to this Request because the words "subject fall" "near" and "day of the incident" are undefined, rendering this Request vague and ambiguous. For clarity, Walmart assumes "subject fall" means the alleged slip and fall by Darlene Stevens on May 10, 2015. Walmart assumes "day of the incident" means May 10, 2015. Walmart also objects because this Request seeks documents already requested in previous Requests and is overbroad and burdensome because it requests "video, audio, other recordings or pictures" regardless of (i) when such documents were created, (ii) to what the documents relate (e.g., store receipts) and (iii) who authored the documents. Walmart also objects to this Request because it seeks (1) documents not within Walmart's possession, custody, or control, (2) information neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, (3) information protected as attorney-client communications or attorney work product, and (4) information already produced by Walmart as part of Walmart's initial disclosures.

Subject to and without waiving these objections, Walmart responds: Walmart has already provided its surveillance video of Plaintiff Darlene Stevens slip and fall on May 10, 2015.

Dated: September 13, 2017                **LAW OFFICES OF CHARLES ABBOTT, PC**

By: /s/ Charles Abbott
Charles Abbott (SBN 13811)
2150 Park Place, Suite 100
El Segundo, CA 90245

Attorney for Defendant, Wal-Mart Stores, Inc.

## CERTIFICATE OF SERVICE

Under Fed. R. Civ. P. 5(c), I hereby certify I am a shareholder of Law Offices of Charles Abbott, P.C. and that on September 13, 2017, I caused the foregoing

**Wal-Mart Stores, Inc.'s Responses to Plaintiff's Requests for Production**

to be served:

☐   By placing a true and correct copy of the same, enclosed in a sealed envelope upon which first class postage was fully prepaid, to be deposited for mailing in the U.S. mail in El Segundo, California.

☒   Pursuant to Fed. R. Civ. P. 5(b)(2)(E) and L.R. 5005(e)(2), by sending it via electronic means to the e-mail address for the attorney listed below; or

☐   By hand delivery.

To the attorney listed below:

Jacqueline Bretell
jacqueline@morrisandersonlaw.com

### LAW OFFICES OF CHARLES ABBOTT

By: _____

Charles Abbott

# EXHIBIT 3

# esteban



Report

NOTES

Add a new note...

Dec 16, 2017
:40 ~ PC ~

Dec 16, 2017
$

Dec 16, 2017
:00 ~ PC ~ 5g ~

Dec 16, 2017
esteban: trying to get registered but does not seem to work on a Mac computer

Dec 16, 2017
$

SESSIONS

| Session Ended | Type | Earned | Rating | Comments |
|---|---|---|---|---|
| 12/17/17 7:33:29 | GOLD | $1.75 | -- | -- |
| 12/17/17 7:32:35 | Premium | $19.12 | -- | -- |
| 12/17/17 7:00:37 | Premium | $9.89 | -- | -- |
| 12/17/17 6:57:53 | GOLD | $1.75 | -- | -- |

# EXHIBIT 4

>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>

From: esteban <45326562>

# Yay! You Got GOLD!

**GoldieStar**
To: esteban <45326562>
Sent: 2017-12-17 23:56:37
esteban,

Thank you so much for joining me...and for the EXTRA GOLD.

Here is the link for the Pics..
https://www.mediafire.com/folder/zgk28akfei9qg/GS-8262017

Here is the link for your Video...I so hope you enjoy.
http://www.mediafire.com/file/brwdstqp3jpc7v6/GS-Blk_Thigh_High_Boot-DP.1.m4v

Cum play with me soon... :p

xoxo
GoldieStar

+++++ To download the links, copy and paste each link into your browser. Hit enter to take you to the download page. Please download the Pic Sets and/or Videos to your computer. +++++

See more

Reply
**esteban <45326562>**
To: GoldieStar

Sent: 2017-12-17 07:33:29

🟡 esteban sent you $5.00 GOLD after your paid session on December 17, 7:33 am GMT

>>>>>>>>>>>>>>>>>>>>>>>>>>

From: esteban <45326562>

# where did you go

**GoldieStar**
To: esteban <45326562>
Sent: 2017-12-17 07:08:58
esteban,

Hey babe...I'm cumming back on now...

Cum play.
xoxoxox
GoldieStar

See more
[In response to esteban's message dated 12-16-2017 11:02PM]

> come back

Reply
**esteban <45326562>**
To: GoldieStar
Sent: 2017-12-17 07:02:27
come back

# EXHIBIT 5

>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>

From: esteban <45458301>

# it is difficult to see when your performing, text me

Reply

**esteban <45458301>**

To: GoldieStar

Sent: 2018-01-06 06:34:51

hey I love to watch your performances but I keep missing them, can you send me a text when your performing or about to get started so I can log on? text me at 714-675-5334
Esteban

# EXHIBIT 6



714-675-5334

All    Maps    Shopping    Images    Videos    More          Settings    Tools

About 296 results (0.39 seconds)

**2 Owners Found for (714) 675-5334 | 7146755334 | Spokeo**
https://www.spokeo.com/714-675-5334 ▾
Reverse phone lookup for (714) 675-5334. Find the (714) 675-5334 caller's full name, address, email, and photos at Spokeo.

**Wynn Investigations Inc - CheatingSupport.com**
https://www.cheatingsupport.com/professional/wynn-investigations-inc/ ▾
Description: Steve Wynn President and CEO. Wynn Investigations Inc. 1315 N. Tustin Avenue, Suite I-297, Orange, Ca 92867. Phone: (714) 675-5334 e-mail: swynn10087@aol.com www.Wynninvestigations.com. Steve Wynn is a retired Detective with over 22 years experience in Police Investigations including but not ...

**714-675-5334 / 7146755334 Owner Info - RevealName**
https://www.revealname.com/714-675-5334 ▾
714-675-5334 belongs to WYNN STEVE and is serviced by AT&T Wireless. Find out detailed information on the phone and its owner.

**Wynn Investigations in Orange, CA - (714) 675-5334 - Company Profile**
www.buzzfile.com/business/Wynn-Investigations-714-675-5334 ▾
Wynn Investigations is in the Private Investigator business. View competitors, revenue, employees, website and phone number.

**+17146755334/(714)675-5334 Phone Number Owner in Santa Ana ...**
https://numberville.com › United States
View owner information for +17146755334 phone number. Add owner information to help others.

**WYNN Investigations Orange CA, 92867 – Manta.com**
www.manta.com › ... › Detective, Guard, and Armored Car Services › Investigators
Phone: Show Number (714) 675-5334. Web: www.wynninvestigations.com. Own This Business? Wynn Investigations is a privately held company in Orange, CA and is a Single Location business. Categorized under Investigations. Our records show it was established in 2010 and incorporated in CA. Current estimates show ...

**714675553XX - Free Reverse Phone Lookup | US Phonebook**
https://www.usphonebook.com/714-675-53
(714) 675-5311 · (714) 675-5312 · (714) 675-5315 · (714) 675-5316 · (714) 675-5317 · (714) 675-5318 · (714) 675-5319 · (714) 675-5320 · (714) 675-5322 · (714) 675-5323 · (714) 675-5328 · (714) 675-5328 · (714) 675-5329 · (714) 675-5331 · (714) 675-5332 · (714) 675-5333 · (714) 675-5334 · (714) 675-5336.

**714-675-5336 | 7146755336 | US Phonebook**
https://www.usphonebook.com/714-675-5336

# EXHIBIT 7

Charles Abbott (SBN 13811)
**Law Offices of Charles Abbott, PC**
840 Apollo Street, Suite 100
El Segundo, CA 90245
(310) 912-3577
cabbott@cabbottlaw.com

Ronald H. Reynolds (SBN 827)
Harrison J. Reynolds (SBN 13748)
**Reynolds & Associates**
823 Las Vegas Blvd. S., Suite #280
Las Vegas, NV 89101
(702) 445-7000
(702) 385-7743

Attorneys for Defendant, Wal-Mart Stores, Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DARLENE STEVENS, as an individual and as the wife of SCOTT STEVENS, and SCOTT STEVENS, as an individual and as the husband of DARLENE STEVENS, <br><br> Plaintiff, <br><br> v. <br><br> KEVIN PRENTICE, WAL-MART STORES, INC., DOE MAINTENANCE EMPLOYEE, DOE EMPLOYEE, DOE JANITORIAL EMPLOYEE, DOE OWNER I-V, ROE OWNERS, ROE EMPLOYER, and ROE COMPANIES, <br><br> Defendants. | Case Number:  2:17-cv-00970-JCM-PAL <br><br> **WAL-MART STORES, INC.'S SECOND SUPPLEMENTAL INITIAL DISCLOSURES UNDER FED. R. CIV. PROC. 26(a)** |

Pursuant to Federal Rule of Civil Procedure 26(a)(1), Defendant Wal-Mart Stores, Inc. ("Walmart") make these Second Supplemental Initial Disclosures and objections ("Second Supplemental Initial Disclosures").

Walmart's Second Supplemental Initial Disclosures are based on information available to Walmart. Because Walmart has not yet completed its discovery, Walmart has not completed its investigation into additional facts, documents, or witnesses, all of which could support its defense of the Complaint filed by Darlene and Scott Stevens ("Stevens"). So, Walmart reserves the right to present witnesses, documents, and evidence besides that which is disclosed as part of these Second Supplemental Initial Disclosures. Walmart also recognizes its continuing obligation under Federal Rule of Civil Procedure 26(e)(1) to supplement these Second Supplemental Initial Disclosures and will do so promptly as Walmart learns of and/or receives additional relevant information during discovery.

By listing witnesses and documents, Walmart does not waive its right to assert any privilege or protection at an appropriate time or to seal information under a protective order.

### Disclosures

**I.    Identity of Persons Likely to Have Discoverable Information that the Disclosing Party May Use to Support its Claims or Defenses**

Walmart identifies these individuals under Rule 26(a)(1)(A). Walmart does not consent to Plaintiffs' communications or contact with individuals not listed who are employees of the Walmart store where Ms. Stevens's alleged injury occurred. Walmart does not concede that the individuals listed have discoverable information relevant to Stevens's claims or Walmart's defenses. Walmart has identified such individuals based on a broad reading of its disclosure obligations.

1.  Kevin Prentice
    c/o Law Offices of Charles Abbott, PC
    840 Apollo Street, Suite 100
    El Segundo, CA 90245

2.  Merranda Perralta
    c/o Law Offices of Charles Abbott, PC
    840 Apollo Street, Suite 100
    El Segundo, CA 90245

3.  Trevor Blake
    c/o Law Offices of Charles Abbott, PC
    840 Apollo Street, Suite 100
    El Segundo, CA 90245

4.  Doug Ayerst
    c/o Law Offices of Charles Abbott, PC
    840 Apollo Street, Suite 100
    El Segundo, CA 90245

5.  Don Nobis
    Don Nobis Progressive Physical Therapy
    801 S Rancho Drive
    Las Vegas, NV 89106

6.  Steven Wynn
    Steve Wynn, President and CEO
    Wynn Investigations Inc,
    1315 Tustin Avenue, Suite #I-297
    Orange, Ca 92867

Steven Wynn, a private investigator is expected to testify about performances he recorded of Darlene Stevens as Goldie Star, including a description of such performances, what activities she engaged in and her body movements while performing. Mr. Wynn is also prepared to testify about the frequency of performances and the length of Ms. Stevens' performances. He also will testify about Streamate.com, the website which broadcasts, Ms. Stevens' streams. He also will be prepared to testify about contracts performers must sign with Streamate and its parent company before being permitted to perform online.

7.  Marilyn Pacheco, C.P.C.
    Elevate Services, Inc.
    201 S. Santa Fe Avenue
    Suite 100
    Los Angeles, CA  90012

Marilyn Pacheco is expected to provide expert testimony regarding the medical charges set forth in Plaintiff's medical records.

        8.  James B. Manning, MD
            Bone & Joint Specialist
            2680 Crimson Canyon Drive
            Las Vegas, NV  89128

        9.  Reynold L. Rimoldi, MD
            Nevada Orthopedic & Spine Center
            7455 W. Washington Ave., Suite 160
            Las Vegas, NV  89128

Dr. Manning and Dr. Rimoldi are expected to provide expert testimony regarding the medical procedures set forth in Plaintiff's medical records. Both will testify about their review of Plaintiff's physical movements in her shows as Goldie Star and the relation of such movements to Darlene Stevens's pain complaints and alleged injuries. Dr. Rimoldi will also provide expert testimony regarding his examination of Plaintiff, and Dr. Manning will testify about Plaintiff's knee injuries, pain management, therapy, and efficacy of treatment.

**II.**    **Description by Category and Location of Documents, Data Compilations, and Tangible Things in the Possession, Custody or Control of Defendants, Which May Be Used to Support Claims or Defenses**

    Under Federal Rule of Civil Procedure 26(a)(1)(B), Walmart contemplates

using these documents to support its defenses to Stevens's Complaint.

        1.  Walmart's Claims Forms;

        2.  Statements and reports from eyewitnesses;

        3.  Plaintiffs responses to Walmart's Interrogatories, Requests for Production, and Requests for Admission;

        4.  Policies and procedures about customer safety and floor maintenance;

        5.  Screenshots of Darlene Stevens in her role as Goldie Star performing for her business Goldie Star via the Internet;

        6.  Still images of Darlene Stevens in her role as Goldie Star at various dates and times;

        7.  Publicly available documents obtained from the Streamate

website about Goldie Star;

8. Documents about Goldie Star received from ICF Technology, Inc. pursuant to a subpoena. These documents detail the frequency Ms. Stevens earned money as she performed in her role as Ms. Star;

9. Documents showing the dates and times of online performances on Streamate.com of Darlene Stevens as Goldie Star received from ICF Technology, Inc. pursuant to a subpoena;

10. Videos of Darlene Stevens as Goldie Star in online performances on Streamate.com; and

11. All deposition transcripts and videotapes.

## III.   Demonstrative Exhibits

Walmart may offer at trial, certain Exhibits for demonstrative purposes including, but not limited to, the following:

1.   Photographs and videos of the Walmart store and the specific location where Darlene Stevens fell;

2.   Charts, diagrams, and summaries depicting Darlene Stevens' work schedule, performances, and monies earned;

3.   Charts, diagrams, and summaries depicting Darlene Stevens' visits and appointments with medical providers;

4.   Charts, diagrams, and summaries depicting Streamate.com, where Darlene Stevens' broadcasts pornographic streams;

5.   PowerPoint files summarizing and depicting the facts and circumstances of the incident, Plaintiff Darlene Stevens' work history and performances and her medical visits;

6.   Videos and pictures of Plaintiffs;

7.   Medical treatment and surgery timeline; and

8.   Charts, diagrams, and summaries depicting Plaintiff Darlene Stevens' medical expenses;

1          Walmart reserves the right to supplement these disclosures with any

2    and all other relevant information and documents that come into its

3    possession. This includes videos of Plaintiff's physical performances

4    broadcast on Streamates.com at any time. And Walmart reserves the right to

5    use all other exhibits utilized by Plaintiffs.

6

7    Dated: January 18, 2018      **LAW OFFICES OF CHARLES ABBOTT, PC**

8

9          By: /s/ Charles Abbott_____
      Charles Abbott (SBN 13811)

10         840 Apollo Street, Suite 100
      El Segundo, CA 90245

11         Attorney for Defendant, Wal-Mart Stores, Inc.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28