UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| DARLENE STEVENS, et al., | Case No. 2:17-cv-00970-JCM-PAL |
| Plaintiffs, | |
| v. | **ORDER** |
| WAL-MART STORES, INC., et al., | (Mot. Disqualify Counsel – ECF No. 67) |
| Defendants. | |

Before the court is Defendants' Motion to Disqualify Plaintiffs' Counsel, or in the Alternative, Strike Plaintiffs' Complaint (ECF No. 67). This Motion is referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) and LR IB 1-3 of the Local Rules of Practice. The court has considered the motion, the Declaration of Robert Phillips (ECF No. 69), Supplemental Declarations of Robert Phillips (ECF Nos. 70, 71), plaintiffs' Opposition (ECF No. 74), and defendants' Reply (ECF No. 77), as well as the arguments of counsel at the hearings conducted March 6, 2018, and March 23, 2018. During oral argument, counsel for Wal-Mart requested an opportunity to make an in camera submission supporting the motion. The court granted the request and also gave plaintiffs' counsel an opportunity to submit a supplemental affidavit addressing points raised by counsel for Wal-Mart during oral argument. Mins. of Proceedings (ECF No. 78). The court has now had the opportunity to review Wal-Mart's voluminous in camera submission (ECF No. 79), and the Supplemental Declaration of Siria Gutierrez, Esq. (ECF No. 80).

## BACKGROUND

### I.     Procedural History

The complaint in this case was filed in state court and removed April 5, 2017. Pet. for Removal (ECF No. 1). The case arises out of a slip and fall at a Wal-Mart store located at 540 Mark Street, Henderson, on May 10, 2015. Plaintiff Darlene Stevens alleges she slipped and fell

on a slippery substance on the floor resulting in personal injuries to her head, neck, shoulders, back, legs, hips, knees, ankles, feet, toes, and wrists. Plaintiff Scott Stevens is her husband and asserts a claim for loss of consortium. The removal petition indicates that Ms. Stevens claims past medical specials in excess of $478,000.00.

Discovery in this case has been extremely contentious and the court has resolved multiple motions to compel, to quash and for protective orders, most recently at a hearing held on March 6, 2018. *See* Mins. of Proceedings (ECF No. 72). Five motions were set for hearing that day—four discovery dispute motions, a joint stipulation to extend the discovery plan and scheduling order deadlines, and an earlier filed "emergency motion" to disqualify. The current motion was filed three days before the March 6, 2018 hearing. The court denied the motion to vacate the hearing on all pending motions until the "emergency motion" to disqualify was decided, but set this motion to disqualify for hearing two days after the reply brief was due.

## II. The Parties' Positions

### A. Wal-Mart's Motion

Wal-Mart claims that it first learned on March 1, 2018, in an email communication that its former lawyer, Siria Gutierrez, "has been surreptitiously prosecuting this case against it." Neither Ms. Gutierrez nor her current law firm previously disclosed her representation, or obtained a waiver of a conflict of interest from Wal-Mart. Counsel for Wal-Mart was "stunned" to learn after receiving a March 1, 2018 email discussing scheduling the depositions of Ms. Stevens treating physicians that Ms. Gutierrez was one of the lawyers now prosecuting the case against it. Counsel for Wal-Mart was "equally stunned" to receive subsequent communications from plaintiffs' counsel that not only admitted Ms. Gutierrez was involved in this case, but refused "to cease such unethical conduct."

Ms. Gutierrez was employed by Wal-Mart's outside counsel, Phillips, Spallas & Angstadt, LLC ("Phillips Spallas") from August 29, 2011, until June 27, 2014. During this time, she defended Wal-Mart in 37 separate cases. The motion asserts that while with the firm Ms. Gutierrez directly communicated with Wal-Mart regarding confidential litigation and discovery plan and case resolution strategies. Wal-Mart communicated its views regarding liability, damages, and

settlement to Ms. Gutierrez in confidence. Additionally, Ms. Gutierrez conducted legal research, produced protected work product, and prepared pleadings and motions derived from Wal-Mart's privileged information. Wal-Mart compensated Ms. Gutierrez for her services.

The motion argues that "[n]otably and in particular Ms. Gutierrez researched, strategized, prepared, drafted, and personally executed" such pleadings as Wal-Mart Stores, Inc.'s opposition to extend discovery deadlines (second request) (ECF No. 20) in *Pate v. Wal-Mart Stores, Inc.*, 2:12-cv-01377-JAD-PAL. Wal-Mart finds Ms. Gutierrez's work in the *Pate* case particularly significant because Ms. Gutierrez "used the exact same work product she prepared for Wal-Mart in *Pate* against her former client in this case." Mot. at 5 (citing ECF No. 63).

Wal-Mart argues that immediate disqualification of Ms. Gutierrez and the firm of Morris//Anderson and/or Big Horn Law is mandatory because they unethically sued a former client without Wal-Mart's express written consent. Wal-Mart maintains that Ms. Gutierrez's representation of the plaintiffs in this case constitutes a violation of Nevada Rule of Professional Conduct 1.9, which mirrors the American Bar Association Rule 1.9. Additionally, plaintiffs' law firm should be disqualified for violating Nevada Rule of Professional Conduct 1.10 which prohibits a firm from knowingly representing a client when any member of the firm practicing alone would be prohibited from doing so.

Citing *Coles v. Arizona Charlie's*, 973 F. Supp. 971, 973 (D. Nev. 1997), Wal-Mart argues that the court is compelled to disqualify plaintiffs' counsel from representing the plaintiffs in this case to preserve the integrity of its judgment, maintain public confidence and the integrity of the bar, eliminate conflicts of interest, and protect confidential communications between attorneys and their clients. Wal-Mart maintains that disqualification under the conflict of interest rule is warranted in this case because the prior representation and the current representation are substantially related. Specifically, plaintiffs' counsel represented Wal-Mart in 37 "identical matters" for almost 3 years. Therefore, plaintiffs' firm cannot ethically represent plaintiffs' without adversely affecting the interests of Wal-Mart.

Citing *Waid v. Eighth Judicial District Court*, 121 Nev. 605, 610; 119 P.3d 1219, 1223 (2005), Wal-Mart argues that in applying the test for determining whether an attorney's prior and

current representations are substantially related, the court must "(1) make a factual determination concerning the scope of the former representation, (2) evaluate whether it is reasonable to infer the confidential information allegedly given would have been given to a lawyer representing a client in those matters, and (3) determine whether that information is relevant to the issues raised in the present litigation."

Wal-Mart asserts that a party seeking disqualification on the grounds that an attorney's prior representation of a client is substantially related to current representation is not required to divulge confidences actually communicated. Under applicable Nevada law, the court should not inquire into whether an attorney actually acquired confidential information in prior representation. Rather, the court should undertake a realistic appraisal of whether confidences might have been disclosed in a prior matter that would be harmful to a client in the current litigation.

Wal-Mart claims that this case is "identical" to the 37 other cases in which Ms. Gutierrez defended Wal-Mart because all of those cases involved personal injury tort claims, the same or similar theories of liability, and the same defenses. "Therefore, it is axiomatic that Ms. Gutierrez's three years of direct communications with Wal-Mart resulted in obtaining confidential information from the client." Wal-Mart paid Ms. Gutierrez to conduct legal research, produce privileged work product, and prepare pleadings and motions derived from privileged work product. Her extensive confidential relationship with Wal-Mart and the fact that confidences between Wal-Mart and Ms. Gutierrez could be used in this case against Wal-Mart mandate disqualification of plaintiffs' counsel and the firm representing plaintiffs in this case.

Wal-Mart also argues that plaintiffs' counsel has violated Nevada Rule of Professional Responsibility 1.6 by using confidential information obtained through Ms. Gutierrez's prior, confidential relationship with it to Wal-Mart's prejudice in this case. This is because she used the very motion she filed for Wal-Mart in *Pate v. Wal-Mart* in this case. Although the motion is public record and available for use by anyone, "it would be ludicrous to suggest that the citation in this case is a mere coincidence." Rather, Ms. Gutierrez clearly intentionally and willfully used her Wal-Mart work product against her former client.

///

4

Wal-Mart contends that the ethical violations are so blatant, egregious, and willful, that the court should strike plaintiffs' complaint because the harm to Wal-Mart is irreparable. Plaintiffs' counsel deliberately concealed Ms. Gutierrez's involvement in this case, and Wal-Mart only discovered that Ms. Gutierrez was involved in this case by her inadvertent inclusion in the March 1, 2018 email sent by plaintiffs' firm to Wal-Mart's current counsel.

## B. Response Plaintiffs'

Plaintiffs oppose the motion arguing that Wal-Mart's motion is wrong as a matter of law. Neither Ms. Gutierrez nor the law firm of Morris//Anderson dba Big Horn Law are disqualified from representing the plaintiffs in this case. Plaintiffs argue that Wal-Mart's motion to disqualify is a transparent attempt at retribution. Wal-Mart's prior counsel was caught "red handed in multiple ethical violations" faced immediate disqualification and was replaced by current counsel who is now employing "a tit for tat strategy to improperly attempt to deprive plaintiffs' of their chosen counsel." Plaintiffs contend that Ms. Gutierrez is only barred from representing the plaintiffs in this matter if this case is "substantially related" to one or more cases in which she previously represented Wal-Mart.

Plaintiffs agree that the Nevada Supreme Court has adopted a three-prong test to determine whether a matter is substantially related for purposes of disqualification of counsel. Plaintiffs also concede that Wal-Mart had an attorney-client relationship with Ms. Gutierrez from August 2011 through June 2014, and that plaintiffs' interests in this case are adverse to Wal-Mart interests. However, plaintiffs dispute that Wal-Mart has met its burden of proving that this case is substantially related to the cases in which Ms. Gutierrez previously represented Wal-Mart.

The opposition relies heavily on a district court decision in this district, *Sanchez v. American Family Mutual Insurance Company*, 2:11-cv-01507-KJD-RJJ, 2012 WL 4498226 (D. Nev. Sept. 28, 2012). There, Magistrate Judge Robert J. Johnston denied a motion to disqualify a former insurance defense lawyer who had previously represented American Family. In *Sanchez* as in this case, neither side disputed the attorney-client relationship or the adverse nature of the current representation. Rather, the issue was whether the representation at issue in the motion to disqualify and the former representations were substantially related. Judge Johnston applied

Nevada law holding that a superficial resemblance between the matters is insufficient. Under Nevada law the court must look to the specific claims of each case and determine if there is a factual similarity between the current representation and former representation that affects the present representation. Moreover, and significantly, Judge Johnston found that a lawyer is not disqualified merely because she or he has industry knowledge. The fact that the attorney was involved in discovery, settlement negotiations, and litigation strategy decisions with the insurance company's in house counsel, and therefore obtained knowledge regarding the insurance company's strategies, decisions and inner workings is insufficient to raise a reasonable inference that confidential communications were communicated. Because American Family had not clearly established how the attorney obtained any confidential information, the motion to disqualify was denied.

Plaintiffs argue that here as in the *Sanchez* case, the only information that Gutierrez gained through representation of Wal-Mart is no more than general experience any attorney representing a retail company would acquire. Ms. Gutierrez cannot be faulted for obtaining experience and industry knowledge.

The response is supported by the declarations of Jacqueline Bretell, a partner in Big Horn Law, LLC d/b/a/ Morris//Anderson. Bretell Decl. ¶ 1. Ms. Bretell attests that on March 1, 2018, she intentionally included Ms. Gutierrez in an email to Wal-Mart's counsel, Mr. Phillips, regarding this case because Ms. Gutierrez had recently joined the law firm and began working on the case. *Id.* ¶ 3. The declaration acknowledges that this case is adverse to Wal-Mart. *Id.* ¶ 5. However, she attests that Morris//Anderson does not currently possess or have access to sources of confidential client information regarding Wal-Mart or any of its affiliates or subsidiaries, particularly client documents or files. *Id.* ¶ 6.

The response is also supported by the declaration of Ms. Gutierrez who acknowledges that she was employed by the law firm of Phillips, Spallas and Angstadt, LLC from August 2011 to June 2014, and that the majority of her work involved representing Wal-Mart Stores, Inc. in tort litigation. Gutierrez Decl. ¶ 3. Ms. Gutierrez acknowledges an attorney-client relationship with Wal-Mart during her employment with the prior firm, and that this matter is adverse to Wal-mart.

*Id.* ¶¶ 3–4.  She attests that when she ended her relationship with Wal-Mart as counsel in June 2014, Wal-Mart retained all files and documents she had in her possession, and that she retained no files, documents, or other information beyond her general experience.  *Id.* ¶ 5.  Her declaration acknowledges that she did not receive a waiver from Wal-Mart related to current or future representation of any client adverse to Wal-Mart in any matter "substantially related" to one or more matters in which she formerly represented Wal-Mart.  *Id.* ¶ 6.

### C. Wal-Mart's Reply

Wal-Mart replies that if this case does not reflect a clear conflict of interest in violation of the Rules of Professional Conduct, "then the time-honored concepts of 'attorney-client privilege', 'attorney duty to client' and 'conflict check' are indeed obsolete."  Plaintiffs' opposition does not contain a single declaration attesting to the fact that Ms. Gutierrez does not possess Wal-Mart's confidential information, or that "she has not surreptitiously used such information in this case."  Ms. Gutierrez's declaration is more revealing for what it omits than what it includes.  Nowhere does she swear that she has no distinct knowledge about Wal-Mart which is not otherwise known in the industry.  Gutierrez also does not claim that she did not receive confidential information from Wal-Mart, or that information she obtained from Wal-Mart is relevant to the issues in this case.

During her representation of Wal-Mart, Ms. Gutierrez filed multiple motions to seal and/or for protective order to protect Wal-Mart's confidential and privileged information to which she is now privy.  Wal-Mart is not required to disclose that confidential information in order to prevent the disclosure of confidential information.  Rather, the court should undertake a realistic appraisal of whether confidences might have been disclosed in a prior matter that would be harmful to the client in the later matter.  The court should apply its experience adjudicating Wal-Mart cases over the years and conclude Ms. Gutierrez was privy to such particulars such as confidential policies and procedures, settlement thresholds, factual scenarios which triggered distinct litigation strategies, and the confidential history of lawsuits and claims against Wal-Mart, to name just a few.

///

1    Wal-Mart argues that plaintiffs' reliance on *Sanchez* is misguided.  The *Sanchez* case is

2  factually distinct from this case in many important respects.  First, the *Sanchez* case involved

3  tripartite representation distinct to the insurance defense world.  In *Sanchez*, the court concluded

4  that the attorney facing disqualification possessed no more knowledge than any other attorney

5  working in the industry.  However, Ms. Gutierrez clearly possesses information distinct to Wal-

6  Mart and her knowledge is "not generic."  *Sanchez* is also distinguishable from this case because

7  the attorney facing disqualification argued that the scope of his former representation was different

8  from his subsequent representation.  There, the attorney argued that he had no direct or general

9  contact with the claims department, that every underinsured motorist claim is unique, and that the

10  claims handling process is unique to every case.  However, while Ms. Gutierrez represented Wal-

11  Mart, she had direct contact with some of the very personnel at Wal-Mart who are working on this

12  case.  She picked their brains and is now using this knowledge against them.

13    This case is further distinguishable from *Sanchez* because the court need not infer that

14  confidential information was communicated to Ms. Gutierrez as this court knows full well the

15  breadth and scope of the confidential information possessed by a Wal-Mart attorney.  This is

16  because the court's docket is replete with Ms. Gutierrez's very own pleadings in which she

17  attempts to prevent disclosure of Wal-Mart's confidential information.  Clearly, she did more than

18  just learn the methodology of investigating claims.  A law firm opposing disqualification bears the

19  burden of showing that the firm does not currently possess or have access to sources of confidential

20  client information, particularly client documents or files.  Plaintiffs' counsel has clearly not met

21  this burden.

22    Wal-Mart claims that this case is more similar to *Coles v. Arizona Charlie's* than *Sanchez*.

23  In *Coles*, Magistrate Judge Johnston disqualified the attorney because she had been privy to

24  confidential facts regarding the employer and had actively participated in office strategy meetings

25  regarding the employer's practices in litigation even though the attorney claimed she did not

26  recollect any confidential information.  The same attorney intended to impugn the same

27  employment policies she had previously defended while representing the employer.  The *Coles*

28  case illustrates that the former client need not prove that the disqualified attorney obtained

confidential information, or that the disqualified attorney even remembered it and/or used it. All that is required is the court's common-sense appraisal that Ms. Gutierrez acquired confidential information while defending Wal-Mart which could be harmful to her former client in this case.

Finally, Wal-Mart argues that the court is not only obligated to disqualify plaintiffs' counsel, but to strike the complaint as it is the only remedy for the irreparable harm caused by counsels' ongoing and intentional violations of the Rules of Professional Conduct.

Under the imputed disqualification rule, the law firm is disqualified if Ms. Gutierrez is disqualified. Plaintiffs must not be permitted to benefit from their counsels' blatant disregard for and intentional violations of the Rules of Professional Conduct. Although Wal-Mart is a big company, it is entitled to be treated as an individual. The betrayal of the ethical duty is no less. Ms. Gutierrez and her law firm are now attempting to leverage Wal-Mart's confidential information into monetary gain.

### D. Post Hearing Filings

After the hearing, counsel for Wal-Mart submitted confidential sealed and in camera declarations of Robert Phillips (ECF No. 79), and voluminous attached exhibits to support Wal-Mart's disqualification motion. One of Mr. Phillips declarations was submitted in support of a request to seal the second substantive declaration and supporting documents. Neither affidavits were served on opposing counsel. The first affidavit was filed to show good cause for filing the declaration of Mr. Phillips under seal. The affidavit supporting sealing the substantive affidavit states only that the documents and the declaration were not served on plaintiffs' counsel "because the Declaration and documents contain privileged, proprietary, and confidential information." While the court agrees that the documents submitted in camera are privileged and confidential, the same cannot be said of the entirety of Mr. Phillips' declaration, which outlines his version of Ms. Gutierrez's relationship with the law firm and Wal-Mart. Although portions of Mr. Phillips' declaration explain categories of confidential information Ms. Gutierrez would have received representing Wal-Mart, the bulk of the declaration describes how Mr. Phillips and/or his partner Ms. Entzminger trained and supervised Ms. Gutierrez in her work, and the generic type of information she would have received in communications with Wal-Mart. The court has carefully

reviewed the affidavit and voluminous attached documents.

Ms. Gutierrez filed a Supplemental Declaration (ECF No. 80) on the public docket. Section I relates her work history with Phillips Spallas (Gutierrez Suppl. Decl. ¶ 4); her prior work history (*id.* ¶¶ 5–6); and her subsequent work history after leaving Phillips Spallas (*id.* ¶¶ 7–8). Ms. Gutierrez joined Morris//Anderson on February 5, 2018. *Id.* ¶ 9. Morris//Anderson did a conflict check and sent a conflict letter to the managing partner of her prior firm when she joined the firm. *Id.* ¶¶ 10–11. She disclosed her prior representation of Wal-Mart to Morris//Anderson. *Id.* ¶ 12.

Section II of the declaration describes in substantial detail the supervision she received from Brenda Entzminger while Ms. Gutierrez was at Phillips Spallas. *Id.* ¶¶ 15–24. This section of the declaration indicates she was supervised by Ms. Entzminger, not Mr. Phillips; and she could not identify "a single fact remotely similar to the hypothetical Mr. Phillips proposed during the Hearing, of a particular allegation in a Complaint resulting, in <u>all</u> of Wal-Mart cases, in particular a minimum settlement value by Wal-Mart." *Id.* ¶ 15. She never heard of a single "universal Wal-Mart principle; each and every case was evaluated solely based on its own facts, allegations and workup." *Id.* Ms. Entzminger's "management style" precluded her from using information or wisdom gleaned in one case from being utilized in another case, beyond general practices and procedural knowledge. *Id.* She attests that Ms. Entzminger had absolute control over every aspect of her training and practice at Phillips Spallas and absolutely prohibited her from speaking directly to the client without her knowledge and approval. *Id.* ¶ 17. She acknowledges that she learned confidential settlement amounts during representation of Wal-Mart for various tort litigation cases, but cannot specifically recall any such number for any specific case. *Id.* ¶ 18. As an associate with Phillips Spallas, Ms. Entzminger required her "to evaluate every case separately, based on the individual facts of each matter, including the facts surrounding the incident, all available evidence, the plaintiff's claim, general and special damages, the plaintiff's medical and personal history that could be relevant, and any other relevant factors, and potential liability and exposure." *Id.* ¶ 20. She handled several different types of Wal-Mart cases including cases involving a wrongful death, falling merchandise, and slip-and-falls inside and outside of the store. *Id.* ¶ 22.

1    Section III of the declaration describes the substance of the work she did at Phillips Spallas

2    under Ms. Entzminger's supervision, and essentially relates that Ms. Entzminger was in complete

3    control and that Ms. Gutierrez had limited independence. *Id*. ¶¶ 25–45. The majority of the cases

4    she handled for Wal-Mart involved store policies and procedures that were discoverable and

5    produced to opposing counsel where the incidents occurred between 2009, and 2012, and possibly

6    into 2013. *Id.* ¶ 35. She described the types of tasks she learned to do while an associate at Phillips

7    Spallas. *Id.* ¶ 40. She describes what she learned at Phillips Spallas under Ms. Entzminger's

8    supervision as "limited to skills and knowledge that any other tort defense litigation attorney would

9    be expected to learn as a new associate to the practice of law." *Id.* ¶ 41. Wal-Mart's outside

10   counsel guidelines are publicly available online. *Id.* ¶¶ 42–43. Since leaving Phillips Spallas, she

11   has reviewed and evaluated hundreds of different cases based on specific facts and allegations in

12   each case. *Id.* ¶ 44. In none of these cases did she find that her experience at Phillips Spallas

13   provided anything useful beyond general industry knowledge, practices and procedures. *Id.* She

14   has not shared any of the limited confidential information that she recalled during her

15   representation of Wal-Mart to anyone. *Id.* ¶ 45. All confidential information she learned at Phillips

16   Spallas "was case specific, based on the facts and workup of that case, and none of that confidential

17   information would have any application whatsoever outside of the case in which I learned it, at

18   Wal-Mart or anywhere else." *Id.*

19       Section IV of the supplemental declaration indicates that her representation of Wal-Mart

20   in this case is adverse to Wal-Mart's interests but has been "extremely limited." *Id.* ¶ 46. She has

21   not requested, nor obtained, any waiver from Wal-Mart. *Id.* ¶ 49. She explains how she accessed,

22   paid for, and downloaded publicly available pleadings in *Pate v. Wal-Mart* to access public records

23   she had previously prepared and filed. *Id.* ¶ 53. She also attests that she was intentionally copied

24   on a settlement negotiation email sent to Mr. Phillips on February 20, 2018. *Id.* ¶ 48. A copy of

25   the email is attached as an exhibit to the declaration. Mr. Phillips did not raise any disqualification

26   issue when he received that email, and did not raise the issue until March 1, 2018. The only work

27   she has done in this case involves reviewing the motion to disqualify and assisting in preparation

28   of responsive papers. *Id.* ¶¶ 50, 51, 57. She also had one conversation with plaintiffs regarding

1  the direct communications by prior counsel's investigator with plaintiffs, but did not discuss

2  liability or any other aspects of the case. *Id.* ¶ 56.

3  **<u>DISCUSSION</u>**

4  Federal courts apply state law in determining whether an attorney or firm should be

5  disqualified. *In re County of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000). Attorneys admitted

6  to practice in the District of Nevada "must adhere to the standards of conduct prescribed by the

7  Model Rules of Professional Conduct as adopted and amended from time to time by the Supreme

8  Court of Nevada, except as these standards may be modified by this court." LR IA 11-7.

9  A court may disqualify an attorney from representing a party where there exists (1) a clear

10  violation of the professional rules of conduct; (2) that affects the public view of the judicial system

11  or the integrity of the court; and (3) it is serious enough to outweigh the parties' interests in counsel

12  of their choice. *Kalinauskas v. Wong*, 808 F. Supp. 1469, 1472 (D. Nev. 1992) (citing *Optyl*

13  *Eyewear Fashion Intern. v. Style Cos.*, 760 F.2d 1045, 1049 (9th Cir. 1985); *In re Coordinated*

14  *Pretrial Proceedings, Etc.*, 658 F.2d 1355, 1360–61 (9th Cir. 1981)). "The moving party bears

15  the burden of establishing an ethical violation or other factual predicate upon which the motion

16  depends." *Hernandez v. Guglielmo*, 796 F. Supp. 2d 1285, 1289 (D. Nev. 2011).

17  In determining whether disqualification is warranted, the district court must undertake a

18  balancing test to "weigh the prejudices that the parties will suffer based on the district court's

19  decision, consider the public interest in the administration of justice, and discourage the use of

20  such motions for purposes of harassment and delay." *Nevada Yellow Cab Corp. v. Eighth Jud.*

21  *Dist. Ct.*, 123 Nev. 44, 53, 152 P.3d 737, 742–43 (2007). If an ethical violation is established, the

22  court has broad discretion in determining whether disqualification, or some lesser sanction, is

23  warranted. *Guglielmo*, 796 F. Supp. 2d at 1290; *Nevada Yellow Cab*, 123 Nev. at 53–54, 152 P.3d

24  at 743. Although "doubts should generally be resolved in favor of disqualification," the court

25  should not allow parties to "misuse motions for disqualification as instruments of harassment or

26  delay." *Brown v. Eighth Jud. Dist. Ct.*, 116 Nev. 1200, 1205, 14 P.3d 1266, 1270 (2000).

27  Disqualification may be necessary to prevent disclosure of confidential information that

28  may be used to an adverse party's disadvantage. *Nevada Yellow Cab*, 123 Nev. at 53, 152 P.3d at

743. However, disqualification is a drastic sanction, *Guglielmo*, 796 F. Supp. 2d at 1290, which should be imposed only after a careful consideration of the client's right to be represented by the counsel of his choice, and the nature and extent of the ethical violation. *Faison v. Thornton*, 863 F. Supp. 1204, 1216–17 (D. Nev. 1993), *overruled on other grounds*, *Palmer v. Pioneer Inn Assocs., Ltd.*, 338 F.3d 981 (9th Cir. 2003).

Wal-Mart seeks disqualification of plaintiffs' law firm because Ms. Gutierrez formerly represented Wal-Mart while employed by Phillips Spallas for approximately three years. Wal-Mart argues that her prior representation of Wal-Mart precludes her the firm currently employing her, Morris//Anderson, from representing Wal-Mart in this litigation because it violates Nevada Rules of Professional Conduct ("NRPC") 1.6, 1.9, and 1.10.

As an initial matter, the court finds that there is no support in the record for Wal-Mart's claim that Ms. Gutierrez was working on this case "surreptitiously," that her involvement in the case was deliberately concealed, or that her inclusion on the March 1, 2018 email from plaintiffs' counsel to defense counsel was "inadvertent." These inflammatory accusations are pure speculation. Both Ms. Gutierrez and Ms. Bretell aver in their declarations that Ms. Gutierrez started with the law firm February 5, 2018, and was intentionally copied on the March 1, 2018 email to defense counsel. Moreover Ms. Gutierrez was copied on February 20, 2018 email exchanges among counsel discussing Wal-Mart's settlement offer to the plaintiffs and their response. She was identified as a member of Big Horn Law with her office email address provided. Mr. Phillips sent and received these email exchanges. It is uncontroverted that neither Ms. Gutierrez nor Morris//Anderson informed Wal-Mart or its outside counsel that she had joined the firm and would be working on this case. It is also undisputed that neither Ms. Gutierrez nor the firm requested a conflict of interest waiver from Wal-Mart. However, the February 20 and March 1 email exchanges belie the disparaging accusations made in the motion to disqualify that Ms. Gutierrez was secretly working on this case and that her involvement was deliberately concealed and only discovered because she was inadvertently copied on email exchanges between the law firms.

///

13

There is also no support in the record for Wal-Mart's claim that Ms. Gutierrez has disclosed any confidential or privileged information she was privy to while representing Wal-Mart in violation of NRPC 1.6.

It is undisputed that during the 3-year period that Ms. Gutierrez was employed by Phillips Spallas, she represented Wal-Mart in 37 cases. It is also undisputed that the vast majority of her work with the law firm was devoted to representing Wal-Mart. Wal-Mart argues that Ms. Gutierrez is disqualified from representing the plaintiffs in this case based on NRCP 1.9 which involves duties to former clients. It provides:

> **Rule 1.9. Duties to Former Clients**
>
> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.
>
> (b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client:
>
>> (1) Whose interests are materially adverse to that person; and
>>
>> (2) About whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter;
>>
>> (3) Unless the former client gives informed consent, confirmed in writing.
>
> (c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
>
>> (1) Use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or
>>
>> (2) Reveal information relating to the representation except as these Rules would permit or require with respect to a client.

NRPC 1.9. Rule 1.9 (formerly Supreme Court Rule 159) is identical to ABA Model Rule 1.9. "If an attorney was directly involved in representing his former firm's client in a matter," NRPC 1.9(a) rather than NRCP 1.9(b) applies. *New Horizon Kids Quest III, Inc. v. Eighth Jud. Dist. Ct.*, --- Nev. ----, 392 P.3d 166, 170 n.2 (2017) (noting that this was the situation the court addressed in both *Waid v. District Court.*, 121 Nev. 605, 119 P.3d 1219, 1222 (2005), and *Nevada Yellow Cab*). The parties agree that if Ms. Gutierrez is disqualified from representing the plaintiffs in this case that Morris//Anderson is also disqualified from representing the plaintiffs under the imputation of conflicts of interests provisions of NRPC 1.10.

For a potential disqualifying conflict to exist under Rule 1.9(a), the moving party must establish that: (1) it had an attorney-client relationship with the lawyer; (2) the former matter and the current matter are substantially related; and (3) the current representation is adverse to the party seeking disqualification. *Nevada Yellow Cab*, 123 Nev. at 50, 152 P.3d at 741. The parties agree that Wal-Mart had an attorney-client relationship with Ms. Gutierrez and that the current representation is adverse to Wal-Mart. The parties disagree, however, whether this case is substantially related to any other case(s) in which Ms. Gutierrez previously represented Wal-Mart.

In *Waid*, the Nevada Supreme Court adopted the Seventh Circuit's three-part test for determining whether a lawyer's representation of a client in a current case is substantially related to prior representation of a former client. 121 Nev. at 610, 119 P.3d at 1223 (citing *Westinghouse Elec. Corp. v. Gulf Oil Corp.*, 588 F.2d 221, 225 (7th Cir. 1978)). This test requires the trial court to (1) make a factual determination concerning the scope of the former representation, (2) evaluate whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters, and (3) determine whether the information is relevant to the issues raised in the present litigation. *Id.* A superficial resemblance between the current and former representation is insufficient. *Nevada Yellow Cab*, 123 Nev. at 52, 152 P.3d at 742 (quoting *Waid*, 121 Nev. at 610, 119 P.3d at 1223). Rather, the court must focus on "the precise relationship between the present and former representation." *Id.*

The burden of proving that two matters are the same or substantially related is on the party moving for disqualification. *Robbins v. Gillock*, 109 Nev. 1015, 1017, 862 P.2d 1195, 1197 (1993); *see also Sanchez*, 2012 WL 4498226, at *3. "The focus on the inquiry should be on the precise nature of the relationship between the present and former representation." *Robbins*, 109 Nev. at 1018, 862 P.2d at 1197. Because the trial court is more familiar with the case in which disqualification is sought, and because "a district court's discretion in such matters is broad" the trial court's decision "will not be set aside absent a manifest abuse of discretion." *Nevada Yellow Cab*, 123 Nev. at 54, 152 P.3d at 743.

For the reasons explained below the court finds that Wal-Mart has not met its burden of establishing that this case is substantially related to any case in which Ms. Gutierrez previously

1  represented it.  Thus, neither Ms. Gutierrez nor Morris//Anderson are disqualified from

2  representing the plaintiffs in this case.

3      Wal-Mart's motion to disqualify relies heavily on a 1997 District of Nevada decision by

4  Magistrate Judge Johnston in *Coles v. Arizona Charlie's*, 973 F. Supp. 971 (D. Nev. 1997).  *Coles*

5  was decided before the Nevada Supreme Court adopted the Seventh Circuit's three prong

6  substantial relationship test in *Waid*.[1]  The court will therefore analyze the current motion based

7  on the three-part test the Nevada Supreme Court subsequently adopted in *Waid*, which Judge

8  Johnston applied in his 2012 *Sanchez* decision.

9      In this case, it is undisputed that while Ms. Gutierrez was employed by Phillips Spallas,

10  virtually all of her work involved representing Wal-Mart.  However, the motion to disqualify does

11  not even attempt to provide any factual specifics about the 37 prior cases in which Ms. Gutierrez

12  formerly represented Wal-Mart.   The motion to disqualify merely states that her prior

13  representation of Wal-Mart is "identical" to her current representation of the plaintiffs because all

14  of her prior cases involved personal injury tort claims, the same or similar theories of liability, and

15  the same defenses.  This unhelpful generic description of her prior representation of Wal-Mart

16  does not show similarity or superficial resemblance, let alone substantial similarity.  As Judge

17  Johnston pointed out in *Sanchez*, the courts which have applied the *Waid* factors "look to the

18  specific facts of the pending and prior cases to determine whether the facts are substantially related

19  and thus whether the scope of the prior representation interferes with the present representation."

20  *Sanchez*, 2012 WL 4498226, at *2 (citing *Nevada Yellow Cab*, 123 Nev. 44; *Waid*, 121 Nev. 605).

21

22  [1] Coles is also factually distinguishable because there the disqualified lawyer had been a member of a firm

23  hired by Arizona Charlie's to advise it on employment law policies and practices and to represent the
company in employment litigation.  An associate who worked for the law firm and participated in the

24  representation of Arizona Charlie's left the firm, formed her own firm, and later filed a lawsuit on behalf
of a client against Arizona Charlie's for employment discrimination.  The lawyer sent a demand letter to

25  Arizona Charlie's stating that her office was aware of other incidents of discrimination that showed a pattern
and practice of discrimination.  The court found that the plaintiff's counsel intended to litigate the same

26  employment practices and policies on which her former firm provided legal advice to Arizona Charlie's,
and that she had actively participated in firm strategy meetings regarding Arizona Charlie's employment

27  practices and litigation.  She also intended to take a position adverse to those employment practices which
her firm previously defended Arizona Charlie's.  On these facts the court found a substantial relationship

28  between the two representations and therefore disqualified the lawyer and her firm.

16

1    The Ninth Circuit has also adopted the substantially related test for disqualification. *Gas-A-Tron of Arizona v. Union Oil Co. of California*, 534 F 2d 1322, 1325 (9th Cir. 1976). In *Trone v Smith*, 621 F 2d. 994, 998 (9th Cir. 1980), the Ninth Circuit explained that "[s]ubstantiality is present if the factual contexts of the two representations are similar or related." As the Nevada Supreme Court has held, superficial resemblance or similarity between the case in which disqualification is sought and a prior case in which the attorney previously represented the former client is not sufficient. *Nevada Yellow Cab*, 123 Nev. 44; *Waid* 121 Nev. at 610. Rather, "the focus is properly on the precise relationship between the present and former representation." *Nevada Yellow Cab*, 123 Nev. 44. Here, Wal-Mart has made no effort at all to describe the precise relationship between this case and any of the 37 prior cases in which Ms. Gutierrez previously represented it.

Wal-Mart has not presented the court with any evidence of factual similarities between the current case and the former representation. The motion states only that Ms. Gutierrez represented Wal-Mart in personal injury tort claims. All personal injury tort claims are not substantially related to all other personal injury tort claims. Ms. Gutierrez's declaration attests she represented Wal-Mart in wrongful death, falling merchandise, and slip-and- fall cases inside and outside the store. This is a slip-and-fall case. Wal-Mart's motion to disqualify does not even indicate how many of the 37 prior cases were slip-and-fall cases or that Ms. Gutierrez represented Wal-Mart in any prior slip-and-fall case with substantially similar facts to the facts involved in this case.

All slip-and-fall cases have certain things in common. Every first year law student learns the elements of premises liability claims and defenses to those claims. The court does not question that Ms. Gutierrez received confidential information and had attorney client communications with Wal-Mart in the cases in which she represented Wal-Mart. However, this does not mean she and her current firm are disqualified from representing a client in any present or future personal injury tort case against Wal-Mart. To prevail on a motion to disqualify Wal-Mart must meet its burden of establishing all three prongs of the substantially related test have been met. Wal-Mart has not met its burden in this case.

/ / /

1  The documents submitted for in camera review have not met Wal-Mart's burden. They

2 establish the obvious—that Ms. Gutierrez, like any lawyer representing a client in litigation

3 received confidential information and engaged in attorney client communications with the client

4 *about the cases in which she was representing Wal-Mart*. The documents do not establish that any

5 of the confidential communications or privileged communications she received in those cases are

6 substantially related to this case. As Judge Johnston explained in *Sanchez*, Ms. Gutierrez "cannot

7 be faulted for obtaining experience and general knowledge." 2012 WL 4498226, at *3. Wal-Mart

8 has failed to meet its burden of showing that confidential or privileged information Ms. Gutierrez

9 received in her prior representation of Wal-Mart is relevant to the issues involved in this litigation.

10  For these reasons,

11  **IT IS ORDERED**: Wal-Mart's Motion to Disqualify Plaintiffs' Counsel (ECF No 67) is

12 **DENIED.**

  DATED this 8th day of June, 2018.

13

14

15               PEGGY A. LEEN
                UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28